*TurThis opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 19**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TABERONE DAVE HONIE,
*Petitioner and Appellant,*

*v.*

STATE OF UTAH,
*Respondent and Appellee.*

No. 20110620
Filed May 30, 2014

Fifth District, Cedar City
The Honorable G. Michael Westfall
No. 030500157

Attorneys:

Jon M. Sands, Therese M. Day, David A. Christensen,
Salt Lake City, for petitioner and appellant

Thomas B. Brunker, Salt Lake City, for respondent and appellee

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1   In May 1999, Petitioner Taberone Dave Honie was convicted of aggravated murder.  Mr. Honie waived his right to a jury at sentencing and was subsequently sentenced to death by the trial judge.  Following an unsuccessful direct appeal, Mr. Honie sought postconviction relief pursuant to the Utah Post Conviction Remedies Act (PCRA).  This case comes before the court on appeal from a grant of summary judgment denying Mr. Honie postconviction relief on the basis of ineffective assistance of counsel.  Mr. Honie also brought a motion under rule 60(b) of the Utah Rules of Civil Procedure to set aside the postconviction court's final judgment.  That motion was also denied and Mr. Honie appealed.  We have consolidated the appeals for review and decision.

¶2    On appeal, Mr. Honie argues that the postconviction court erred when it granted the State's motions for summary judgment. He also claims that the postconviction court abused its discretion in denying his rule 60(b) motion. We hold that Mr. Honie has failed to raise a genuine issue of material fact as to the first set of claims and that the district court did not abuse its discretion in regard to its rule 60(b) denial. We accordingly affirm the postconviction court's grant of summary judgment and denial of rule 60(b) relief.

## BACKGROUND

¶3    Mr. Honie was convicted of aggravated murder and sentenced to death. This court affirmed his conviction and sentence on direct appeal. *State v. Honie*, 2002 UT 4, 57 P.3d 977 (*Honie I*). Mr. Honie subsequently filed a petition for postconviction relief, alleging ineffective assistance of trial counsel. Although we previously detailed the facts of Mr. Honie's crime in *Honie I*, we briefly restate the relevant facts here.

## I.  THE MURDER OF CLAUDIA BENN

¶4    On July 9, 1998, Mr. Honie murdered Claudia Benn. At approximately 8:00 p.m. on the evening of the murder, Mr. Honie telephoned Carol Pikyavit, the victim's daughter, asking her to come see him at the house where he was staying. Carol refused, telling Mr. Honie she needed to go to work. Mr. Honie became upset and threatened that if Carol did not come to meet him, he would kill her mother and her nieces.

¶5    Between his first telephone call at 8:00 p.m. and the time Carol left for work, Mr. Honie telephoned twice more. Carol and her sister, Benita, left for work at approximately 10:30 p.m., leaving their three children with Claudia.[1] The children were dressed and ready for bed when Carol and Benita left.

¶6    Around 11:20 p.m., a cab driver picked up Mr. Honie. Although the cabdriver could tell that Mr. Honie was intoxicated, Mr. Honie was still able to give him directions to the victim's neighborhood.

¶7    At approximately 12:20 a.m., several police officers arrived at the victim's home in response to a neighbor's 911 call. Upon arriving at the victim's home, the officers noticed that a sliding glass

---

[1]    One of the children, T.H., is the daughter of Carol and Mr. Honie. The other two children, D.R. and T.R., belong to Benita.

door had been broken, permitting entry to the home. The officers ordered the occupants of the house to exit and discovered Mr. Honie leaving the home through the garage. An officer commanded Mr. Honie to put his hands up and ordered him to the ground. Mr. Honie complied. Upon seeing blood on Mr. Honie's arms from his fingertips to his elbows, the officer asked Mr. Honie where he got the blood. Mr. Honie responded, "I stabbed her. I killed her with a knife."

¶8 After arresting Mr. Honie, the officers inspected the victim's home. Inside, they discovered the victim's partially nude body lying face down on the living room floor. A large blood-stained kitchen knife lay near her head.

¶9 The victim's three grandchildren were also found inside the home. Two of the children had some blood on them, and one child, D.R., "was covered, literally, head to toe with blood." In addition, D.R. was found only wearing a t-shirt; she was not wearing the underwear she had on when her mother left for work. D.R.'s underwear was never recovered from the scene of the murder. D.R. was given new underwear the night of the murder, but the social worker taking care of D.R. later noticed blood on them. The blood was later determined to be D.R.'s. Upon examining D.R., a physician at Primary Children's Medical Center determined that the bleeding was caused by abrasions in her genital area that were consistent with rubbing or fondling. The physician also estimated that D.R.'s injury was inflicted less than twenty-four hours before her examination.

¶10 The postmortem examination of the victim revealed that Mr. Honie brutally slit the victim's throat, cutting her neck from ear to ear. Four "start marks" on the victim's neck ran together into a deep cut that ran from the front of her neck through to her backbone. In addition to the neck wounds, Mr. Honie mutilated the victim's lower body, stabbing her multiple times in her genitalia.

¶11 After his arrest, Mr. Honie was taken to the Iron County Jail where Officer Lynn Davis interviewed and photographed him. Officer Davis interrogated Mr. Honie three separate times on the morning following the murder. Over the course of his interviews with Officer Davis, Mr. Honie admitted he had argued with the victim prior to breaking into her home by smashing the sliding glass door with a rock. Mr. Honie also told Officer Davis that he attempted to penetrate the victim's anus with his penis, but decided not to after realizing the victim had died. In each of the interviews,

however, Mr. Honie expressed remorse for killing the victim, stating repeatedly that Claudia was not meant to die.

## II. MR. HONIE'S TRIAL, CONVICTION, AND DEATH SENTENCE

¶12   The State charged Mr. Honie with aggravated murder in violation of Utah Code section 76-5-202. At trial, the State presented evidence of numerous aggravating factors,[2] including the evidence of D.R.'s condition the night of the murder. The State argued that Mr. Honie had molested D.R. on the night of the murder and urged the jury to find aggravated sexual abuse of a child as an aggravating factor.

¶13   Mr. Honie's counsel openly admitted his client's guilt, stating, "I know in this case there is no question of Mr. Honie's guilt. You are going to find him guilty. The question in this case is going to be one of punishment." Thus, rather than contesting Mr. Honie's guilt, trial counsel chose to focus on the sentencing phase of the trial by highlighting Mr. Honie's expressions of remorse and attempting to counter the aggravating factors proffered by the State.

¶14   The jury convicted Mr. Honie of aggravated murder, finding five aggravating factors: (1) object rape, (2) forcible sodomy, (3) aggravated sexual assault, (4) burglary, and (5) aggravated burglary. The jury, however, could not reach unanimity on a sixth aggravating factor: aggravated child sexual abuse.

¶15   Mr. Honie waived his right to a jury at the sentencing phase. Following an extensive colloquy with the judge prior to trial, Mr. Honie signed a jury waiver indicating that he had discussed the waiver and its ramifications with trial counsel. In the colloquy, Mr. Honie stated he understood that he was waiving his right to be sentenced by a twelve-person jury and that his sentence would instead be determined by a single judge. Mr. Honie also stated that he waived the jury voluntarily.

¶16   During the sentencing phase, trial counsel chose to highlight Mr. Honie's family and personal background, as well as Mr. Honie's statements of remorse to the police following his arrest.

---

[2]   The State argued that Mr. Honie committed aggravated murder because he killed Claudia while also committing rape, object rape, forcible sodomy, sexual abuse of a child, aggravated sexual abuse of a child, aggravated sexual assault, aggravated burglary, and/or burglary. *Honie I*, 2002 UT 4, ¶ 46, 57 P.3d 977.

Dr. Nancy Cohn, a forensic psychologist, testified on Mr. Honie's behalf. In addition to proffering testimony concerning Mr. Honie's personal history, including his mental and physical condition, Dr. Cohn testified as to Mr. Honie's remorse. Specifically, Dr. Cohn indicated that Mr. Honie began crying when he admitted to her that he molested D.R. the night of the murder.

¶17 The trial judge found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Mr. Honie to death in accordance with section 76-3-207 of the Utah Code. The judge specifically found four aggravating factors: (1) that the murder involved object rape, (2) that the murder was committed in the course of an aggravated sexual assault, (3) that Mr. Honie was engaged in committing aggravated burglary at the time of the murder, and (4) that during the murder Mr. Honie also engaged in aggravated sexual abuse of D.R. The court also noted Mr. Honie's criminal history, including a prior drunken assault on Carol, and the impact Mr. Honie's crime had on the victim's family. In addition, the court considered the mitigation evidence offered by Mr. Honie, including evidence of his intoxication at the time of the murder, his personal background, his relative youth at the time of the crime, and Mr. Honie's expressed remorse for his conduct. Ultimately, the trial judge determined, beyond a reasonable doubt, that the death penalty was appropriate and so sentenced Mr. Honie. We affirmed Mr. Honie's sentence on direct appeal, *Honie I*, 2002 UT 4, 57 P.3d 977, and the U.S. Supreme Court denied certiorari, *Honie v. Utah*, 537 U.S. 863 (2002).

### III. MR. HONIE'S POSTCONVICTION PROCEEDINGS

¶18 Mr. Honie began his postconviction appeals process in February 2003, raising a variety of ineffective assistance of counsel claims.[3] In response to Mr. Honie's December 2003 Amended Petition for Post Conviction Relief, the State filed a motion to dismiss or for summary judgment. Most of Mr. Honie's claims were dismissed when the postconviction court granted, in part, the State's motion for partial summary judgment. The postconviction court also denied part of the State's motion based on an affidavit submitted by a defense mitigation consultant, which asserted that trial

---

[3] In his first petition for postconviction relief, Mr. Honie brought nine claims. In his amended petition for postconviction relief, Mr. Honie brought sixty-seven claims. We will address only those claims raised on appeal. *See infra* ¶ 24.

counsel's mitigation investigation had been inadequate. Because the State proffered no evidence to contradict the consultant's assessment of trial counsel's investigation, the postconviction court held that Mr. Honie had established a factual dispute sufficient to survive summary judgment as to the adequacy of trial counsel's mitigation investigation.

¶19 Following the postconviction court's ruling, the State moved for discovery on Mr. Honie's surviving claims. Mr. Honie's postconviction counsel subsequently filed a motion requesting additional funds to complete discovery. In November 2006, the postconviction court denied Mr. Honie's request for additional funds, holding in part that Mr. Honie had already received the maximum amount of funding allowed for postconviction investigation under the PCRA. In addition, the court held that it did not have jurisdiction to consider Mr. Honie's motion for additional funding because he had not exhausted his administrative remedies with the Utah State Division of Finance.

¶20 In June 2007, the State filed a second motion for summary judgment, supported by an affidavit from Mr. Honie's trial counsel in which he testified as to the mitigation investigation he had conducted prior to Mr. Honie's trial. Mr. Honie subsequently filed a motion to stay the proceedings, arguing that he could not oppose the State's motion without additional funding. Extensive litigation ensued, in which Mr. Honie argued that he needed additional funds to hire experts to testify as to his state of intoxication at the time of the murder, as well as to conduct a more complete investigation into potential mitigating factors in his background.

¶21 In the midst of Mr. Honie's funding dispute, the Legislature amended the PCRA, granting courts authority to exceed the statutory $20,000 limit on litigation costs in death penalty postconviction cases upon a showing of "good cause." Utah Code § 78B-9-202(3)(c).[4] The postconviction court determined that the revised PCRA applied retroactively to Mr. Honie's case, thereby allowing Mr. Honie to petition for additional funding.

¶22 In March 2010, the postconviction court again denied Mr. Honie's request for more funds. The court reasoned that Mr. Honie could not demonstrate good cause because he was unable

---

[4] Prior to 2008, funding for litigation costs in death penalty postconviction cases had an absolute cap of $20,000. Utah Code § 78-35a-202(2)(c) ( 2004); UTAH ADMIN. CODE r. 25-14-5 (2004).

to show that additional funds were likely to lead to the development of evidence that would support postconviction relief. Following its denial of Mr. Honie's request for additional funds, the postconviction court considered the State's second motion for summary judgment. The court determined that, with the addition of trial counsel's affidavit testimony, the State was entitled to judgment as a matter of law and granted the State's motion.

¶23 Two months after he filed a notice of appeal in his postconviction proceedings, Mr. Honie filed a rule 60(b)(6) motion with the postconviction court, seeking relief from the court's summary judgment order on the basis of ineffective assistance of his postconviction counsel. In his rule 60(b) motion, Mr. Honie argued that his postconviction counsel had been rendered ineffective as a result of the court's failure to grant additional funding, which would have allowed counsel to further pursue Mr. Honie's ineffective assistance of trial counsel claims. The postconviction court denied Mr. Honie's motion,[5] holding that lack of funding did not render Mr. Honie's postconviction counsel ineffective.

¶24 Mr. Honie timely appealed the postconviction court's 60(b) ruling, and we consolidated his postconviction and rule 60(b) appeals. In his consolidated appeal, Mr. Honie raises six separate claims of ineffective assistance of counsel: (1) trial counsel improperly decided on a concession strategy too early, which caused him to inadequately investigate potential defenses or mitigating factors; (2) trial counsel failed to investigate or pursue a voluntary intoxication defense to the aggravated murder charge; (3) trial counsel failed to object to the destruction of evidence demonstrating Mr. Honie's intoxication on the night of the murder; (4) trial counsel failed to request suppression of Mr. Honie's inculpatory statements to the police; (5) during the penalty phase of trial, trial counsel introduced Mr. Honie's inculpatory statement to Dr. Cohn in which Mr. Honie

---

[5] The postconviction court exercised jurisdiction in accordance with our decision in *White v. State*, 795 P.2d 648, 650 (Utah 1990). In *White*, we held that although filing a notice of appeal divests a district court of jurisdiction to make any additional rulings in a case, the district court "has jurisdiction to consider a rule 60(b) motion after an appeal has been filed and also has power to deny it. But if the motion has merit, the trial court must so advise the appellate court, and the moving party may then request a remand." *Id.* at 649–50.

admitted to molesting D.R.; and (6) trial counsel failed to properly advise Mr. Honie about his right to have a jury determine his sentence. In addition to his ineffective assistance of counsel claims, Mr. Honie argues that the postconviction court erred when it refused to approve additional funds that would have allowed him to further develop his claims of ineffective assistance of counsel. Finally, Mr. Honie argues that the postconviction court erred when it denied his motion for relief pursuant to rule 60(b)(6) of the Utah Rules of Civil Procedure.

¶25 The State counters that Mr. Honie's trial counsel was not ineffective under the U.S. Supreme Court's *Strickland* jurisprudence. And the State argues that the postconviction court did not err when it denied Mr. Honie additional funds because Mr. Honie failed to show that additional funds were likely to develop evidence in support of his ineffective assistance of counsel claims. Finally, the State argues that the postconviction court properly denied Mr. Honie's rule 60(b) motion.

¶26 We hold that Mr. Honie has failed to raise a genuine issue of material fact as to his ineffective assistance of counsel claims and that the postconviction court was correct in denying him additional funds. In addition, we hold that the postconviction court did not err when it denied Mr. Honie's rule 60(b) motion. Accordingly, we affirm the postconviction court's grant of summary judgment.

## STANDARD OF REVIEW

¶27 Under the PCRA, "[t]he petitioner has the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." UTAH CODE § 78B-9-105(1). As stated above, Mr. Honie challenges three of the postconviction court's rulings: (1) the court's dismissal of his claims of ineffective assistance of counsel, (2) the court's denial of his motion for additional funding under the PCRA, and (3) the court's denial of his rule 60(b) motion. We apply the following standards of review to each of these claims.

### A. Ineffective Assistance of Counsel Claim

¶28 In this case, Mr. Honie's ineffective assistance of counsel claims were dismissed on summary judgment. We therefore review the postconviction court's grant of summary judgment for correctness. *See Hoyer v. State*, 2009 UT 38, ¶ 7, 212 P.3d 547 ("When reviewing a grant of summary judgment, we review the district

court's conclusions of law for correctness and give them no deference.").

### B. PCRA Funding Claim

¶29 This appeal presents our first opportunity to review a funding determination under the 2008 amendment to the PCRA. As amended, the PCRA authorizes a district court to "exceed the maximum [funding for postconviction review of a death penalty case] only upon a showing of good cause" and provides a list of factors to be considered "[i]n determining whether good cause exists." UTAH CODE § 78B-9-202(3)(b), (e). This statutorily granted discretion is comparable to other contexts in which district courts have been given discretion to depart from a general rule based on a showing of good cause. Examples include decisions of whether to impose sanctions for failure to follow disclosure requirements, whether to grant a motion for a continuance, and whether to waive the notice requirements for an alibi witness. *See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 34, 215 P.3d 933 (explaining that a district court has discretion to impose sanctions where it finds that a party's failure to disclose was harmful to the opposing party and was not supported by good cause ); *Brown v. Glover*, 2000 UT 89, ¶ 43, 16 P.3d 540 (explaining that "[t]rial courts have substantial discretion in deciding whether to grant continuances," which, under Utah Rule of Civil Procedure 40(b), turns on whether good cause has been shown (internal quotation marks omitted)); *State v. Ortiz*, 712 P.2d 218, 219 (Utah 1985) (reviewing for abuse of discretion a district court's decision that "good cause had not been shown for the alibi witness substitution"). In light of the similarity between these decisions and the decision of whether to award additional funding under the PCRA, we will review the postconviction court's denial of Mr. Honie's funding request for an abuse of discretion.

### C. Motion for Relief Under Rule 60(b)

¶30 We review a district court's dismissal of a rule 60(b) motion for abuse of discretion because these motions are inherently fact intensive and involve principles of fairness and equity that are not easily reviewable at the appellate level. *Kell v. State*, 2012 UT 25, ¶ 7, 285 P.3d 1133. But we review for correctness the district court's legal determinations made as part of a 60(b) ruling. *Id.*

### ANALYSIS

### I. MR. HONIE'S TRIAL COUNSEL WAS NOT INEFFECTIVE

¶31 We first turn to Mr. Honie's contention that his trial

counsel was ineffective. We evaluate each of Mr. Honie's ineffective assistance of counsel claims under the Supreme Court's two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Honie must establish for each of his claims (1) that trial counsel's performance was objectively deficient and (2) that such deficient performance was prejudicial. *Id.* at 687. Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address Mr. Honie's claims under either prong. *Id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

¶32 As to the first *Strickland* prong, Mr. Honie must show that trial counsel's "representation fell below an objective standard of reasonableness" when measured against prevailing professional norms. *Id.* at 687–88. The *Strickland* Court conspicuously refused to establish explicit guidelines, instead noting that the proper "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Because of the temptation to second-guess trial counsel's decisions with the benefit of hindsight, "[j]udicial scrutiny of counsel's performance must be highly deferential" and courts must acknowledge a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689. Thus, we examine the reasonableness of trial counsel's conduct in light of the particular facts of the case, viewed as of the time of counsel's conduct. *Id.* at 690.

¶33 Under *Strickland's* second prong, Mr. Honie is required to affirmatively demonstrate that trial counsel's actions prejudiced him. *Id.* at 693. To do so, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When assessing prejudice, we will assume that the decisionmaker "reasonably, conscientiously, and impartially" applied the proper governing standards. *See id.* at 695. Thus, in the context of a postconviction challenge to a death sentence, the proper inquiry is whether the sentencer, in this case the trial judge, "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death" in the absence of counsel's deficient performance. *Id.*

### A. Mr. Honie's Trial Counsel Was Not Ineffective in Investigating the Facts of Mr. Honie's Case

¶34 Mr. Honie claims that his trial counsel improperly decided to pursue a concession strategy following an inadequate investigation into potential defenses and mitigating factors,[6] including (1) the degree of Mr. Honie's intoxication at the time of the murder and during subsequent police interrogation;[7] (2) evidence related to Mr. Honie's potential mental illness, including cognitive defects resulting from Fetal Alcohol Syndrome (FAS); (3) the degree to which Mr. Honie might have been affected by long-term polysubstance abuse; (4) the potential that Mr. Honie suffered brain damage resulting from a fall; and (5) evidence relating to Mr. Honie's background, family history, social situation, and mental state. Specifically, Mr. Honie challenges the postconviction court's determination that trial counsel reasonably relied on expert advice from Dr. Cohn and Mr. Ted Cilwick during his investigation. Mr. Honie argues that it was unreasonable for counsel to rely on

---

[6] Though Mr. Honie's argument on this point is somewhat unclear, he seems to argue that trial counsel's decision to pursue a concession strategy early in the investigatory process colored the entirety of trial counsel's subsequent investigation, causing him to inadequately investigate a number of potential defenses and mitigating factors. But defense counsel in a capital case often faces the daunting task of defending a client whose guilt is clear. In such cases, counsel "may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared." *Florida v. Nixon*, 543 U.S. 175, 191 (2004). If counsel's decision to pursue a concession strategy comports with the demands of *Strickland*, such a strategic decision will not give rise to a successful claim of ineffective assistance of counsel. *Id.* at 192. In this case, we cannot fault trial counsel's decision to pursue a concession strategy in the face of the overwhelming evidence of Mr. Honie's guilt.

Also, to the extent Mr. Honie challenges the *timing* of trial counsel's decision to pursue a concession strategy, he has not directed us to any authority—nor have we discovered any such authority—that would support the proposition that timing alone would invalidate trial counsel's otherwise legitimate strategic choice.

[7] Mr. Honie's claims relating to his potential voluntary intoxication defense will be addressed below. *See infra* Section I.B.

Dr. Cohn "as the sole mental health and mitigation expert because she was not qualified to do all that was required in Honie's case." Additionally, Mr. Honie argues that trial counsel's reliance on Mr. Cilwick was unreasonable because Mr. Cilwick is not a trained mitigation expert, but is instead only a private investigator.

¶35 We conclude that Mr. Honie's trial counsel was not ineffective in his mitigation investigation. We therefore affirm the postconviction court's grant of summary judgment on this issue.

¶36 An attorney has a duty to conduct a reasonable investigation into the facts of his client's case and to make reasonable decisions regarding the proper scope of that investigation. *See Taylor v. State*, 2007 UT 12, ¶ 47, 156 P.3d 739 (citing *Strickland*, 466 U.S. at 691). Counsel's investigation is especially important in death penalty cases. *Id.* Though trial counsel is not required to present all evidence uncovered during the investigation of a client's case, an attorney is required to perform any investigation competently and thoroughly. *Archuleta v. Galetka*, 2011 UT 73, ¶ 125, 267 P.3d 232.

¶37 In evaluating the reasonableness of counsel's investigation, "we consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Taylor*, 2007 UT 12, ¶ 48 (internal quotation marks omitted). Our focus is not on counsel's decision regarding whether to present certain evidence, but rather on "whether the investigation supporting counsel's decision . . . *was itself reasonable*." *Id.* ¶ 47 (internal quotation marks omitted). Accordingly, though we grant counsel wide discretion in trial strategy, "strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (internal quotation marks omitted).

¶38 In *Archuleta*, the defendant raised ineffective assistance of counsel claims very similar to those raised by Mr. Honie. First, Mr. Archuleta challenged his defense counsel's mitigation investigation on the basis that counsel relied solely on the advice of a single expert to evaluate Mr. Archuleta's mental health and personal history. *Archuleta*, 2011 UT 73, ¶ 126. Mr. Archuleta argued that trial counsel should have retained the services of a neuropsychologist to determine whether Mr. Archuleta suffered from brain damage or other mental health problems. *Id.* In rejecting Mr. Archuleta's claim, we noted that trial counsel reasonably relied on the advice of a highly qualified forensic psychologist, who

recommended against further psychological testing. *Id.* ¶ 127. Specifically, we held that

> it is reasonable for counsel to rely on the judgment and recommendations of qualified experts with expertise beyond counsel's knowledge. If an attorney had the burden of reviewing the trustworthiness of a qualified expert's conclusion before the attorney was entitled to make decisions based on that conclusion, the role of the expert would be superfluous.

*Id.* ¶ 129 (internal quotation marks omitted).

¶39 Just as it was reasonable for Mr. Archuleta's trial counsel to rely on a qualified expert, so was it reasonable for Mr. Honie's trial counsel to rely on Dr. Cohn and her findings. Dr. Cohn holds both a masters degree and a Ph.D. in psychology from the University of Utah. She also completed a postdoctoral fellowship at the University of Southern California in forensic psychology. In her investigation, Dr. Cohn examined Mr. Honie's medical and psychotherapy reports, his history of past criminal behavior, and "a very detailed file" on the murder itself, including all police reports. Dr. Cohn interviewed Mr. Honie, his former therapist, his parents, and other family members. She traveled to the Hopi Reservation, where Mr. Honie was raised and examined tribal court records detailing Mr. Honie's criminal history, his mental health records from the Hopi Guidance Clinic dating from 1990 through 1995, Mr. Honie's complete medical records from 1975 through 1996, and what school records were available.

¶40 Dr. Cohn also conducted a "very detailed psychological evaluation" of Mr. Honie over the course of two days. She spent a total of approximately fourteen hours in face-to-face interviews with Mr. Honie and another six hours conducting psychological tests. Dr. Cohn conducted an intellectual screening and concluded that Mr. Honie had an IQ in the average range. She also conducted a neuropsychological screening looking for signs of brain damage stemming from Mr. Honie's extensive history of drug abuse. These tests offered no indication that Mr. Honie suffered from brain damage or any other cognitive defects.

¶41 Given this extensive examination of Mr. Honie and his personal history, we cannot say that Dr. Cohn's mitigation investigation was deficient or that trial counsel was objectively unreasonable in relying on her conclusions. Mr. Honie has failed to raise a factual dispute as to the reasonableness of trial counsel's reliance. It is not

enough to speculate that another expert might have explored other areas of mitigation. Absent facts to support a finding that trial counsel's reliance on his chosen expert was objectively unreasonable, Mr. Honie cannot survive summary judgment on this issue.

¶42 Mr. Honie also claims that trial counsel was deficient in failing to retain a mitigation specialist to conduct the investigation. We disagree. First, trial counsel hired Dr. Cohn, who *is* a mitigation specialist. Second, trial counsel is not required to hire a mitigation specialist in order to comply with his Sixth Amendment obligations.

¶43 We addressed this issue in *Archuleta* as well. Mr. Archuleta's trial counsel hired an investigator who had never before prepared a mitigation case. *Archuleta*, 2011 UT 73, ¶¶ 123–24. We nevertheless rejected Mr. Archuleta's claim that counsel's reliance on his investigator's findings was unreasonable. *Id.* We specifically rejected the argument that defense counsel is required to hire a mitigation specialist to fulfill Sixth Amendment requirements. *Id.* ¶ 125 ("[S]uch specialists are not the only reasonable manner in which a mitigation workup may be accomplished."). Rather, we made clear in *Archuleta* that a defendant must establish that the investigator "rendered unreasonably deficient performance or . . . failed to pursue leads that a reasonably trained mitigation specialist would have pursued." *Id.*

¶44 Mr. Honie has failed to establish that Dr. Cohn and Mr. Cilwick rendered unreasonably deficient performance or failed to pursue valid mitigation leads. Mr. Honie argued before the postconviction court that trial counsel should have investigated the effects on Mr. Honie's behavior of his long-term drug and alcohol abuse, his dysfunctional upbringing and family life, his poverty and cultural background, and his various psychological disorders. But Dr. Cohn's trial testimony establishes that she investigated these areas of Mr. Honie's life. Moreover, beyond his general claim that Dr. Cohn and Mr. Cilwick were too inexperienced to effectively conduct a mitigation investigation, Mr. Honie points to no specific facts that would support a finding that they performed deficiently or failed to follow up on valid leads. Absent such a showing, Mr. Honie cannot survive summary judgment on this issue.

¶45 Finally, Mr. Honie argues, in a cursory fashion, that it was inappropriate for trial counsel to rely on Mr. Honie and his family to supply potential mitigation leads. To the contrary, the Supreme Court has long recognized that counsel's investigatory decisions are usually based on information supplied by the defendant. *Strickland*,

466 U.S. at 691. Indeed, it would be difficult to conceive of a more appropriate source of information as to the defendant's personal background and mental state. Absent some showing that trial counsel completely abdicated his investigatory responsibilities in favor of relying on the unguided contributions of Mr. Honie and his family, we find it perfectly reasonable for trial counsel to have relied on the defendant and his family to assist in his own mitigation investigation.

¶46 In sum, Mr. Honie has failed to raise a factual dispute as to whether trial counsel's mitigation investigation was objectively deficient. Trial counsel was entitled to rely on the advice of qualified experts and did so. We reaffirm that trial counsel is not required to retain a mitigation specialist to satisfy his Sixth Amendment obligations. Moreover, trial counsel may reasonably rely on the defendant and his family to help guide the mitigation investigation. Because we conclude that trial counsel did not render deficient performance in his mitigation investigation, we need not reach the second *Strickland* prong of prejudice and affirm the postconviction court's grant of summary judgment on this issue.

*B. Trial Counsel Was Not Objectively Unreasonable in Choosing Not to Pursue a Voluntary Intoxication Defense at Trial*

¶47 Mr. Honie next argues that trial counsel was ineffective for failing to pursue a voluntary intoxication defense at trial. Specifically, Mr. Honie argues that there was "strong evidence of intoxication available to trial counsel," and that "trial counsel had an obligation to investigate voluntary intoxication as a possible defense at trial before deciding on a concession theory." We hold that Mr. Honie has not established that trial counsel's performance was objectively unreasonable and affirm the postconviction court's grant of summary judgment on this issue.

¶48 Mr. Honie has failed to show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. In evaluating the reasonableness of trial counsel's representation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. Relevant to Mr. Honie's claims, "the law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 124–27 (2009) (holding that in the insanity defense context, counsel is not

obligated to raise claims that he "reasonably believed [were] doomed to fail"); *see also Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (explaining that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant . . . . [or even to] present mitigating evidence at sentencing in every case").

¶49 In order to prevail on a voluntary intoxication defense, Mr. Honie's state of intoxication must have deprived him of the capacity to form the mental state necessary for aggravated murder. *See* UTAH CODE § 76-2-306 ("Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense . . . ."). Thus, trial counsel would have needed to present evidence showing that Mr. Honie was so intoxicated that he neither intended to kill nor knew he was killing a person at the time of the murder. *See* UTAH CODE § 76-5-202 (stating that aggravated murder is committed "if the actor intentionally or knowingly causes the death of another").

¶50 It is not enough to merely present evidence showing that the defendant had been drinking. Rather, to establish a viable voluntary intoxication defense, the defendant must point to evidence showing that he was so intoxicated that he was incapable of forming the requisite mental state for the crimes committed. *See Adams v. State*, 2005 UT 62, ¶ 22, 123 P.3d 400 (stating that "mere proof of drinking or being drunk is not enough in many cases" to mount a voluntary intoxication defense); *see also State v. Wood*, 648 P.2d 71, 90 (Utah 1982) (noting that the defendant must "prove much more than [the fact that] he had been drinking" before committing the offense to be entitled to a voluntary intoxication defense, and that the defendant must "show that his mind had been affected to such an extent that he did not have the capacity to form the requisite specific intent or purpose").

¶51 In arguing that counsel was ineffective in failing to pursue a voluntary intoxication defense, Mr. Honie primarily relies on a toxicology report showing that his blood alcohol content was 0.07 and that he had both active and metabolized THC in his blood four and one-half hours after the murder. Mr. Honie argues that, given the length of time between the murder and the blood test, his blood alcohol level would have been "significantly higher" at the time of the murder. As a result, Mr. Honie argues that trial counsel had a duty to hire an expert to conduct a retrograde extrapolation to show

that his actual blood alcohol level was approximately 0.15 at the time of the murder.

¶52 Mr. Honie also argues that trial counsel knew that he was highly intoxicated at the time of the murder. Specifically, Mr. Honie contends that he told trial counsel that on the day of the murder he consumed an eighteen pack of beer with a friend from 8:00 a.m. to 11:00 a.m. and that between 12:00 p.m. and 1:00 p.m. he and his friend purchased another eighteen pack and continued to drink beer. Mr. Honie also represented that, during this time, he smoked four to five bowls of marijuana and that later in the day he consumed liquor, smoked more marijuana, and also took methamphetamine before consuming more beer.

¶53 Mr. Honie also relies on his actions and statements the night of the murder to demonstrate that he had a high level of intoxication. For example, during his first interrogation, approximately one and one-half hours after the murder, Mr. Honie made numerous nonsensical statements to Officer Davis, telling him the Mexican Mafia was responsible for killing the victim. According to Officer Davis, Mr. Honie "was all over the place," and talked about being a member of the occult and playing with Ouija boards. In subsequent interrogations, however, Mr. Honie admitted to Officer Davis that these statements were not true.

¶54 Finally, Mr. Honie argues that testimony at the preliminary hearing should have alerted trial counsel that Mr. Honie's level of intoxication on the night of the murder was significant. For example, Mr. Honie states that the taxi driver who took Mr. Honie to the victim's neighborhood testified that Mr. Honie was intoxicated. Similarly, Mr. Honie points to the testimony of Carol Pikyavit, the victim's daughter, who stated that Mr. Honie was intoxicated when she spoke with him by phone on the night of the murder. Carol stated that Mr. Honie was not at the point of extreme intoxication, but that she believed "he was getting there."

¶55 Although this evidence may serve to establish that Mr. Honie had been drinking at the time he committed the murder, Mr. Honie has not provided any evidence showing that his "intoxication at the time of the offense prevented him from understanding that his actions were causing the death of another." Evidence of intoxication, be it witness testimony or a numerical measure of the defendant's actual blood alcohol content, is not sufficient to establish a voluntary intoxication defense without actual evidence of the defendant's mental state. Thus, even though

Mr. Honie had consumed both alcohol and marijuana prior to committing the murder, "there is no evidence [showing that] he was so intoxicated at the time of the crime that he was unable to form the specific intent necessary to prove the crime of [aggravated murder]." *Wood*, 648 P.2d at 90.

¶56 Indeed, the evidence suggests the contrary. When the police arrived at the scene of the crime, one of Mr. Honie's first statements to police was "I stabbed her. I killed her with a knife." As the postconviction court noted, this statement "clearly show[ed] that [Mr. Honie] understood he had engaged in lethal conduct upon a human being."

¶57 Similarly, although Mr. Honie claimed at first that he had blacked out during the murder, he later admitted to Dr. Cohn that he remembered the details of the crime and that he wished he had blacked out so that he would not remember what he had done. Again, this evidence shows that Mr. Honie was not so intoxicated that he did not know he was killing the victim.

¶58 In addition, the State points to evidence showing Mr. Honie knew what he was doing immediately before and after the murder. For example, although Mr. Sweeney, the cab driver, could tell that Mr. Honie was intoxicated, he also testified to the fact that Mr. Honie was still able to give him directions to the victim's neighborhood. Similarly, after the commission of the crime, Mr. Honie conversed coherently with police officers and obeyed their commands.

¶59 Officer Davis testified that although Mr. Honie smelled of alcohol during his first interview, Officer Davis did not believe that Mr. Honie was intoxicated to the point that he was unable to understand what Officer Davis was saying or what was going on. Officer Davis stated, "I mean, he was intoxicated, yes, but not—he was not inebriated. I mean he knew what was going on." And the trial court credited Officer Davis's testimony concerning Mr. Honie's level of intoxication, stating, "[W]hile [Officer Davis] knew the defendant had been drinking, it was clear that he was fully aware of his situation. Moreover, the defendant's physical appearance and actions did not indicate that his mental state was out of the ordinary."

¶60 Finally, the fact that Mr. Honie intended to kill is supported by the testimony showing that Mr. Honie threatened to kill the victim on the day of the murder. Carol testified that Mr. Honie called her the day of the murder wanting her to come see him. When

Carol said she could not come because she had to go to work, Mr. Honie threatened to kill her mother. Though Carol testified that Mr. Honie seemed intoxicated during their conversation, Mr. Honie's threat to kill the victim, made only hours before he did kill her, shows that Mr. Honie not only had the capacity to form an intent to murder the victim, but that he in fact acted on that intent. Thus, even though Mr. Honie has pointed to evidence that he was intoxicated at the time of the murder, there was sufficient evidence of his ability to form the requisite mens rea that trial counsel could reasonably decide that a voluntary intoxication defense was untenable.

¶61 In sum, Mr. Honie has pointed to no evidence showing he was so intoxicated that he was unable to form the requisite intent to commit aggravated murder. On the contrary, there is significant evidence demonstrating that Mr. Honie knew what he was doing and had the intent necessary to commit aggravated murder. We accordingly conclude that Mr. Honie would have been unable to establish a viable voluntary intoxication defense and trial counsel was not unreasonable in choosing not to pursue that defense. Because trial counsel's decision not to pursue a voluntary intoxication defense fell well within the range of acceptable performance, we affirm the postconviction court's grant of summary judgment on this issue.[8]

### C. Mr. Honie Was Not Prejudiced by Trial Counsel's Failure to Object to the Destruction of Evidence Relating to Mr. Honie's Level of Intoxication

¶62 Mr. Honie next argues trial counsel was ineffective for failing to object to the destruction of evidence relating to Mr. Honie's level of intoxication at the time of the murder. Because we have concluded that Mr. Honie could not establish a viable voluntary intoxication defense, *supra* ¶ 61, he has not raised a genuine factual dispute as to trial counsel's effectiveness on this issue. Even if we assume trial counsel's decision not to object constituted unreasonably deficient performance, Mr. Honie cannot establish that he was prejudiced by counsel's actions unless he can demonstrate that the

---

[8] Though we need not determine whether Mr. Honie was prejudiced by trial counsel's decision, we note that, in the absence of a viable voluntary intoxication defense, Mr. Honie would be hard pressed to show how the outcome of his trial would have been different had trial counsel pursued such a defense.

evidence was potentially exculpatory. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Because Mr. Honie did not have a viable voluntary intoxication defense, any error on trial counsel's part in failing to object to the destruction of evidence of Mr. Honie's intoxication was harmless. Again, the absolute amount of alcohol or drugs in Mr. Honie's system is insufficient to establish a voluntary intoxication defense when the evidence so strongly demonstrates that Mr. Honie intended to kill Claudia. Because Mr. Honie has not raised a genuine issue of material fact as to the prejudice prong of the *Strickland* analysis, we affirm the postconviction court's grant of summary judgment on this issue.

### D. Trial Counsel's Strategic Decision to Introduce Mr. Honie's Inculpatory Statements to Police Was Not Objectively Unreasonable

¶63 Mr. Honie next argues that trial counsel was ineffective for introducing during the guilt phase of trial inculpatory statements that Mr. Honie made to the police. Specifically, Mr. Honie contends that trial counsel was ineffective for admitting the statements despite the fact that the statements were potentially obtained in violation of Mr. Honie's *Miranda* rights and were highly prejudicial in nature. Because the State had previously agreed to stipulate to the inadmissibility of the statements at trial, Mr. Honie faults trial counsel's choice to introduce them voluntarily.

¶64 Conversely, the State argues that trial counsel made a legitimate strategic decision to admit the statements as part of his concession strategy because he believed the statements exhibited Mr. Honie's remorse. We agree. We hold that trial counsel's strategic choice to voluntarily admit Mr. Honie's inculpatory statements was not objectively unreasonable.

¶65 Mr. Honie has not demonstrated "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. As noted previously, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In addition, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690; *see also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1408 (2011) (noting that strategic decisions of trial counsel "are due a heavy measure of deference" on appellate review (internal quotation marks omitted)).

¶66 Trial counsel may make the strategic choice to use potentially inculpatory evidence if it furthers the client's interest. *See Ayala v. Hatch*, 530 F. App'x 697, 701 (10th Cir. 2013) (approving of trial counsel's strategic choice not to move to suppress inculpatory statements made to the police). As long as such evidence furthers his client's interests, the use of the potentially damaging evidence is not objectively unreasonable. *See Gardner v. Ozmint*, 511 F.3d 420, 430 (4th Cir. 2007) ("An attorney's insistence upon the admission of evidence that significantly damages his client, without using that evidence in any manner to further his client's interest cannot be considered 'sound trial strategy' and certainly does not comport with 'prevailing professional norms.'" (quoting *Strickland*, 466 U.S. at 689)).

¶67 In *Gardner*, the Fourth Circuit held that trial counsel was objectively unreasonable in allowing the admission of inflammatory statements when trial counsel had no strategic reason for doing so. *Id.* at 430. Trial counsel insisted on the admission of damaging statements given by a witness to impeach that witness's testimony, but never used the statements to impeach the witness on cross-examination. *Id.* Because of this, the Fourth Circuit held that trial counsel's agreement to the admission of the inflammatory statements at trial was objectively unreasonable.[9] *Id.*

¶68 But trial counsel's strategic choice to admit a defendant's inculpatory statements may be reasonable if doing so serves the defendant's interests. *See United States v. Fulks*, 683 F.3d 512, 519 (4th Cir. 2012). In *Fulks*, trial counsel advised that the defendant confess his guilt to authorities in a pretrial meeting. *Id.* at 517. When the defendant challenged this advice as unreasonable in postconviction proceedings, trial counsel asserted that his advice was part of an overall strategy designed to avoid the death penalty for his client. *Id.* at 517–18. Moreover, having the defendant confess to authorities prior to trial allowed trial counsel to introduce the defendant's version of events at trial without subjecting the defendant to cross-examination. *Id.* Furthermore, trial counsel stated that "we wanted the statement to be used at trial" because it demonstrated "acceptance of responsibility [and] . . . some true indicia of remorse." *Id.*

---

[9] The Fourth Circuit nevertheless held that the defendant in *Gardner* failed to show ineffective assistance of counsel because he could not prove that he was prejudiced by trial counsel's strategic decision. *Id.* at 430–31.

at 518 (alterations in original)(internal quotation marks omitted). Because of the overwhelming evidence of guilt in the case, the Fourth Circuit recognized the "unpalatable hand the defense team was dealt" and held that trial counsel's strategic choice was not an objectively unreasonable litigation tactic. *Id.* at 519.

¶69 Like the defense counsel in *Fulks*, Mr. Honie's trial counsel was dealt a similarly "unpalatable hand." As we have discussed, Mr. Honie's trial counsel was presented with a client who was clearly guilty of committing a heinous crime. Here, trial counsel adopted a mitigation strategy, attempting to highlight Mr. Honie's feelings of remorse through the admission of statements Mr. Honie made to police. In addition, unlike trial counsel in *Gardner,* Mr. Honie's trial counsel not only had a specific strategic purpose for admitting these statements, but counsel also used them to further his client's interest by attempting to present mitigating evidence for both the judge and jury to consider.

¶70 Even though the statements Mr. Honie made to Officer Davis were inculpatory, because trial counsel had a legitimate strategy for their admission, trial counsel's decision was not objectively unreasonable.[10] We therefore affirm the postconviction court's grant of summary judgment on this issue.

*E. Trial Counsel's Strategic Decision to Introduce During Sentencing Mr. Honie's Confession to Dr. Cohn Was Not Objectively Unreasonable*

¶71 Mr. Honie next argues that trial counsel was ineffective for introducing, during sentencing, Mr. Honie's confession to Dr. Cohn that he had molested D.R. on the night of the murder. Specifically, Mr. Honie argues that trial counsel was ineffective for introducing his confession without first investigating claims that D.R.'s father, and not Mr. Honie, had molested her. We hold that trial counsel's performance was not objectively unreasonable.

¶72 As discussed above, trial counsel's decision to admit potentially damaging statements during trial in an attempt to demonstrate a defendant's remorse is a legitimate trial strategy. *See*

---

[10] Because we find that trial counsel did not render objectively unreasonable performance, we need not determine whether Mr. Honie was prejudiced by the admission of his inculpatory statements. But we note that, in order to establish prejudice, Mr. Honie would need to show that he could have prevented the State from introducing the statements.

*supra* ¶¶ 63–70. So long as trial counsel uses such statements to further his client's interests, we will not question a valid strategic choice. This is especially true when the challenged statements are double-edged, containing both inculpatory and exculpatory elements. The decision whether to admit such statements is an inherently strategic discretion.

¶73 Trial counsel's decision to admit Mr. Honie's confession to Dr. Cohn falls within this category of legitimate trial strategy. During the sentencing phase, trial counsel presented evidence of Mr. Honie's remorse. Specifically, Dr. Cohn testified about Mr. Honie's expressions of remorse, such as the fact that Mr. Honie began crying when he admitted to her that he had molested D.R. Because trial counsel admitted Mr. Honie's confession to Dr. Cohn as part of a legitimate trial strategy in an attempt to highlight Mr. Honie's feelings of remorse, we hold that trial counsel's actions were not objectively unreasonable.

¶74 Accordingly, we conclude that Mr. Honie has failed to demonstrate unreasonable performance under *Strickland* concerning trial counsel's decision to admit Mr. Honie's confession to Dr. Cohn.[11] We therefore affirm the postconviction court's grant of summary judgment on this issue.

### F. Trial Counsel's Advice to Waive Jury Sentencing Did Not Constitute Ineffective Assistance of Counsel

¶75 Mr. Honie asserts trial counsel improperly advised him to waive his right to a jury at sentencing and that his waiver was not knowing and voluntary. Specifically, Mr. Honie argues that the colloquy with trial counsel and the court was inadequate in that it failed to make clear that Mr. Honie had a right to be sentenced by an impartial jury, failed to clarify that the jurors would be required to weigh the aggravating and mitigating factors, and failed to ensure that Mr. Honie understood what mitigating and aggravating factors were. Further, Mr. Honie claims that he changed his mind and wanted to withdraw his waiver prior to trial, but was told by

---

[11] Though we need not reach the issue of whether Mr. Honie demonstrated that he was prejudiced by counsel's strategic decision, we note that the trial court was prepared to find that Mr. Honie molested D.R., even without Mr. Honie's confession. As such, Mr. Honie cannot demonstrate that, but for trial counsel's decision to introduce his inculpatory statements, the court would not have found that Mr. Honie molested D.R.

counsel that it was too late. First, we hold that trial counsel's advice to waive a jury at sentencing was not objectively unreasonable under the first prong of *Strickland.* Second, even if trial counsel's failure to move to withdraw Mr. Honie's waiver constituted deficient performance, we hold Mr. Honie was not prejudiced under the second prong of *Strickland.*

¶76 We begin our analysis with the strong presumption that trial counsel acted competently. *See Strickland*, 466 U.S. at 689. If counsel had a reasonable basis for advising a client to waive a jury at sentencing, we will not second-guess that strategic decision. *See Wiggins*, 539 U.S. at 523 (indicating that counsel's strategic choices made following a thorough review of the relevant facts and law surrounding the issue "are virtually unchallengeable" (internal quotation marks omitted)). We previously have held that counsel may reasonably presume that a trial judge "will apply the law justly and make an impartial decision in both the guilt and penalty phases of a capital trial." *Taylor v. Warden*, 905 P.2d 277, 284 (Utah 1995). Similarly, it is reasonable for counsel to presume that a judge "will disregard any personal beliefs and discharge his or her duty to apply the law." *Id.* "Indeed, absent specific allegations of personal bias, we cannot conceive of any situation in which choosing a judge over a jury would not constitute a legitimate tactical decision." *Id.*

¶77 In *Taylor*, the defendant claimed his counsel was deficient in advising him to waive a jury at both the guilt and sentencing phases of his capital trial. *Id.* Mr. Taylor was convicted of capital homicide and sentenced to death for sexually assaulting an eleven-year-old girl and strangling her with a telephone cord. *Id.* at 281. We rejected Mr. Taylor's ineffective assistance claim in part because we thought it reasonable for counsel to prefer a trained jurist to a lay jury when the crime was particularly gruesome. *Id.* at 288 ("Taylor had very little going for him in the penalty phase, and the determination that his chances were better with a judge than a jury was perfectly plausible.").

¶78 Mr. Honie was charged with a particularly gruesome crime. Though there is no need to reiterate the details of that crime again here, the jury was confronted with those details during the State's case-in-chief. It was not unreasonable for trial counsel to conclude, in light of the overwhelming evidence of Mr. Honie's guilt and the gruesome nature of the crime itself, that Mr. Honie would fare better at sentencing with a judge than with a jury. Moreover, during the April 30, 1999 scheduling conference in which Mr. Honie waived his right to a jury, the trial judge specified that imposing the

death penalty was "the last thing a judge would want to do." The judge acknowledged that, although he was not philosophically opposed to the death penalty, he would only impose it if the facts and circumstances of the case warranted it. Particularly in light of the trial judge's statements on the record, we cannot fault counsel's advice to waive jury sentencing in favor of sentencing by the trial judge.

¶79 Mr. Honie's second claim relating to his waiver of jury sentencing is that his waiver was not knowing and voluntary. Specifically, Mr. Honie claims he was never informed of his right to an impartial jury, was never informed that the jury would be required to weigh the aggravating and mitigating factors, and was never properly instructed as to what aggravating and mitigating factors actually are. The State correctly notes that Mr. Honie's claim that he was not notified regarding his right to an impartial jury and the use of aggravating and mitigating factors is not relevant to his choice between a judge and a jury in terms of sentencing. With either a judge or jury at sentencing, Mr. Honie was guaranteed the right to an impartial sentencer who would weigh the aggravating and mitigating factors.

¶80 The relevant consideration in Mr. Honie's decision to waive jury sentencing was the difference between a single judge and a twelve-person jury. And this difference was described to Mr. Honie during the April 30, 1999 hearing. The trial judge specifically asked whether Mr. Honie understood that he was reducing his chances of convincing a person to vote against the death penalty from "12 [sic] down to one." Thus, the relevant distinction between sentencing by a jury or a judge was explained to Mr. Honie and he affirmed to the court that he understood the distinction and wanted to proceed with the judge at sentencing. We cannot say, on this record, that Mr. Honie's waiver was not knowing and voluntary.

¶81 Finally, Mr. Honie argues that trial counsel rendered ineffective assistance when he failed to move to withdraw Mr. Honie's waiver as requested. According to Mr. Honie, a week after he submitted his jury waiver, he told trial counsel that he had changed his mind and wanted to withdraw the waiver. But trial counsel told Mr. Honie it was too late, even though trial was still a week away. The only record evidence of Mr. Honie's desire to withdraw the waiver is his statement that he told trial counsel he had changed his mind. Because this case comes before us on appeal from a grant of summary judgment, we assume that Mr. Honie did,

in fact, attempt to withdraw his waiver. We need not decide if trial counsel's failure to move to withdraw Mr. Honie's waiver amounts to ineffective assistance of counsel because, even if trial counsel's performance was objectively unreasonable, Mr. Honie cannot show that he was prejudiced. We have previously recognized that the decision to waive a jury is inherently strategic because a defendant will often fare better with a trained jurist than a lay jury, especially when the crime is particularly heinous. *Taylor*, 905 P.2d at 284 ("[A]bsent specific allegations of personal bias, we cannot conceive of any situation in which choosing a judge over a jury would not constitute a legitimate tactical decision."). Mr. Honie has offered no evidence tending to establish that the outcome of his sentencing would have been different had he opted for jury sentencing. Because Mr. Honie has failed to satisfy the prejudice prong of *Strickland*, we affirm the postconviction court's ruling.

¶82 In summary, we hold that Mr. Honie failed to raise a genuine issue of material fact for each of his ineffective assistance of counsel claims, namely: (1) trial counsel's decision to adopt a concession strategy rather than focusing on other potential defenses or mitigating factors, (2) trial counsel's decision not to investigate or pursue a voluntary intoxication defense, (3) trial counsel's failure to object to the destruction of evidence of Mr. Honie's intoxication the night of the murder, (4) trial counsel's failure to suppress Mr. Honie's inculpatory statements to police, (5) trial counsel's introduction of Mr. Honie's inculpatory statements to Dr. Cohn concerning the molestation of one of the children present the night of the murder, and (6) trial counsel's failure to properly advise Mr. Honie of his right to have a jury determine his sentence. We therefore affirm the postconviction court's grant of summary judgment for the State on each of these issues.

## II. THE POSTCONVICTION COURT DID NOT ERR WHEN IT DENIED MR. HONIE'S REQUEST FOR ADDITIONAL FUNDS

¶83 Mr. Honie next argues that the postconviction court erred when it denied him additional funding to develop his ineffective assistance of trial counsel claims. Prior to 2008, the PCRA set an absolute limit on funding for litigation costs in a capital postconviction case of $20,000. UTAH CODE § 78-35a-202(2)(c) (2004); UTAH ADMIN. CODE r. 25-14-5 (2004). In 2008, the Legislature amended the statute to allow for additional funding beyond the $20,000 cap "upon a showing of good cause." *Id.* § 78B-9-202(3)(c). The statute provides that, when considering "whether good cause

exists to exceed" the $20,000 limit, the court shall consider:

> (i) the extent to which the work done to date and the
> further work identified by the petitioner duplicates
> work and investigation performed during the criminal
> case under review; and

> (ii) whether the petitioner has established that the
> work done to date and the further work identified is
> reasonably likely to develop evidence or legal
> arguments that will support postconviction relief.

*Id*. § 78B-9-202(3)(e).

¶84 Shortly after the amendment went into effect, the parties in this case submitted briefing on the issue of whether the amendment applied retroactively to allow Mr. Honie to petition for additional funding. On November 28, 2008, the postconviction court issued a memorandum decision ruling that the 2008 amendment to the PCRA applied retroactively[12] and that Mr. Honie was thus "entitled to seek payment . . . for all work completed and litigation expenses incurred prior to the [amendment's] affective date for which payment had not yet been received." Mr. Honie subsequently filed two motions—one in April 2009 and one in May 2009—requesting that the postconviction court "approve the payment of both past and future litigation expense beyond the statutory cap." In his April 9, 2009 motion, Mr. Honie asked the postconviction court to approve payment for work that his postconviction expert, Mr. Whitman, had already performed. In his May 2009 request, Mr. Honie asked for additional funding to allow for continued investigation and litigation regarding the adequacy of trial counsel's mitigation investigation.

¶85 The postconviction court denied both of Mr. Honie's requests for additional funding. In its memorandum decision, the court explained that Mr. Honie was required, but had failed, to show that the work Mr. Whitman had already done and the future work that he and other experts planned to do were "reasonably likely to develop evidence or legal arguments in support of [Mr. Honie's]

---

[12] Because neither party has challenged on appeal the postconviction court's ruling that the 2008 amendment to the PCRA applied retroactively, we need not review whether that determination was correct. We merely assume for purposes of this appeal that the 2008 amendment did apply to Mr. Honie's funding requests.

claim that trial counsel was ineffective in conducting the mitigation investigation and presenting the mitigation case during trial." Although Mr. Honie had shown that his postconviction mitigation investigators and experts would have followed a *different* mitigation strategy than that of trial counsel, Mr. Honie had failed to show how the additional funding would support his argument that trial counsel's mitigation investigation and counsel's presentation of Mr. Honie's mitigation case were ineffective. In the postconviction court's view, Mr. Honie had not and could not "demonstrate good cause to exceed the maximum sums authorized for litigation expenses under the PCRA."

¶86 We agree with the postconviction court that Mr. Honie failed to show good cause to increase his postconviction funding beyond the $20,000 statutory limit. Where the only issue raised was whether trial counsel had provided ineffective assistance in its mitigation investigation and presentation of Mr. Honie's mitigation case, Mr. Honie was required to show how the additional funding would have likely supported that claim. But Mr. Honie's requests for additional funding merely described that the requested funding would be used to conduct a different mitigation investigation. And because there is a "wide range of reasonable professional assistance," *Strickland v. Washington*, 466 U.S. 668, 689 (1984), simply showing "that some different strategy or procedure might have brought about a better result . . . . is not sufficient to sustain a claim of ineffective assistance of counsel," *Opie v. Meacham*, 419 F.2d 465, 467 (10th Cir. 1969). Because Mr. Honie failed to show good cause, we hold that the postconviction court correctly denied Mr. Honie's requests for additional funding.

### III. THE POSTCONVICTION COURT DID NOT ERR WHEN IT DENIED MR. HONIE'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)(6)

¶87 Finally, Mr. Honie argues that the postconviction court abused its discretion by denying his rule 60(b)(6) motion. Under rule 60(b) of the Utah Rules of Civil Procedure, a district court may set aside a final judgment for reasons such as mistake, newly discovered evidence, or fraud. Where none of rule 60(b)'s enumerated errors are present, a party may seek relief from final judgment under a catch-all provision, which provides that a party may be relieved from a final judgment for "any other reason justifying relief from the operation of the judgment." UTAH R. CIV. P. 60(b)(6).

¶88 Here, Mr. Honie filed a rule 60(b)(6) motion following the district court's order denying his petition for postconviction relief. The basis for his rule 60(b)(6) claim was that his postconviction counsel had been rendered ineffective by the district court's denial of his request for additional funding. Mr. Honie also asserted that the PCRA provision rejecting a right to effective assistance of postconviction counsel violates both the Utah and federal constitutions. *See* UTAH CODE § 78B-9-202(4) (explaining that "[n]othing in this chapter shall be construed as creating the right to the effective assistance of postconviction counsel, and relief may not be granted on any claim that postconviction counsel was ineffective"). In essence, Mr. Honie argued that his postconviction judgment should be set aside because he had a constitutionally protected right to the effective assistance of postconviction counsel—despite the language of the PCRA saying otherwise—and because he was deprived of that right when his postconviction counsel was denied the additional funding necessary to effectively represent him.

¶89 On February 9, 2012, the postconviction court issued its order denying Mr. Honie's rule 60(b)(6) motion. The postconviction court did not reach the constitutional issue, but instead held that regardless of whether a right to effective assistance of postconviction counsel exists, under the *Strickland* standard, Mr. Honie's postconviction counsel was not rendered ineffective by limited investigatory funding.

¶90 We affirm the postconviction court's ruling, but we do so on the alternative ground that a rule 60(b)(6) motion is not an appropriate vehicle for bringing a claim of ineffective assistance of postconviction counsel under the facts of this case. In *Menzies v. Galetka*, we reversed the denial of a postconviction rule 60(b)(6) motion where postconviction counsel behaved in such a grossly negligent manner that the defendant was essentially deprived of postconviction review at both the district court and on appeal. 2006 UT 81, 150 P.3d 480. In *Menzies*, postconviction counsel "willfully disregarded nearly every aspect of Menzies' case," and therefore "defaulted Menzies' entire post-conviction proceeding, resulting in the dismissal of Menzies' case." *Id.* ¶¶ 1, 24. And although Menzies' postconviction counsel timely filed a notice of appeal, he later failed to file a docketing statement, resulting in the dismissal of Menzies' appeal. *Id.* ¶ 39. Because postconviction counsel's egregious behavior not only led to the dismissal of Menzies' case at the district court, but also deprived him of appellate review, we held

that the case rose to the level of "unusual and exceptional circumstances" necessary to allow for rule 60(b)(6) relief. *Id.* ¶¶ 71–77.

¶91 Our subsequent cases have essentially limited *Menzies* to its facts. For example, in *Archuleta v. Galetka*, we held that only where an ineffective assistance of counsel claim rises to the level of "willful and deliberate" inaction or gross negligence, will a rule 60(b)(6) motion be appropriate. 2011 UT 73, ¶ 166 & n.14, 267 P.3d 232. Similarly, in *Kell v. State*, we discussed the limited scope of our holding in *Menzies* and concluded that rule 60(b)(6) relief is most common when a deficiency in either representation or notice precluded appellate review. 2012 UT 25, ¶ 18, 285 P.3d 1133. Unlike the defendant in *Menzies*, the defendant in *Kell* had "moved to set aside a [postconviction] judgment that had been heard, ruled on, and appealed." *Id.* ¶ 20. As a result, we held that *Menzies* was not controlling and affirmed the district court's denial of Kell's 60(b)(6) motion. *Id.*

¶92 Like the defendant in *Kell*, Mr. Honie is seeking to set aside a postconviction judgment that has been heard, ruled on, and appealed. And as with the alleged deficiencies of counsel's performance in *Kell*, the claimed deficiencies of Mr. Honie's counsel did not result in a dismissal of Mr. Honie's postconviction case or in a waiver of his right to appellate review. Although the denial of additional funding may have limited the scope of postconviction counsel's investigation, such limitation did not amount to a complete default of counsel's obligations. We thus reiterate that, short of a complete default in representation, a rule 60(b)(6) motion is an inappropriate vehicle for bringing a claim of ineffective assistance of postconviction counsel. Because Mr. Honie's claims of ineffective assistance of postconviction counsel do not rise to the level of a complete default, we affirm the postconviction court's denial of his rule 60(b)(6) motion.[13]

---

[13] Mr. Honie's argument concerning postconviction counsel's ineffectiveness is unpersuasive for an additional reason. Mr. Honie relies solely on the contention that postconviction counsel was rendered ineffective because of the denial of additional funds that would have enabled counsel to further investigate Mr. Honie's ineffective assistance of trial counsel claims. Yet, as explained above, *supra* ¶¶ 83–86, an award of funds would have been inappropriate

(continued...)

## CONCLUSION

¶93 We hold that Mr. Honie has failed to raise a genuine issue of material fact as to his ineffective assistance of counsel claims and that the postconviction court was correct in denying Mr. Honie additional funds. In addition, we hold that the postconviction court did not err when it denied Mr. Honie's rule 60(b)(6) motion. Accordingly, we affirm the postconviction court's grant of summary judgment on all claims.

_____

[13] (...continued)

because, as a matter of law, Mr. Honie cannot show that trial counsel was ineffective. Therefore, even if a rule 60(b) motion were an appropriate vehicle for these claims, Mr. Honie's contentions concerning postconviction counsel's ineffectiveness fail.