**2019 UT App 7**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KELLY BRUCE COOMBS,
Appellant.

Opinion
No. 20151063-CA
Filed January 10, 2019

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
Nos. 151401748 and 151402149

Emily Adams, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

MORTENSEN, Judge:

¶1    Kelly Bruce Coombs was charged with two counts of child rape, two counts of child sodomy, and eleven counts of sexual exploitation of a minor for possession of child pornography. In exchange for Coombs's guilty pleas to attempted child rape, attempted child sodomy, and sexual exploitation of a minor, the State dismissed the child rape and child sodomy charges. Coombs was sentenced to two concurrent terms of fifteen years to life. On appeal, Coombs argues that his counsel performed deficiently by not arguing for the application of an interests-of-justice proportionality analysis at his sentencing. Coombs asserts that such an analysis would have revealed his sentence to be arbitrary in comparison with the

seriousness of his crimes and the sentences for other offenses in Utah. Coombs argues that the sentencing court would have imposed a lighter sentence had it come to this realization. We are unpersuaded and affirm the sentence Coombs received.

## BACKGROUND

¶2 Coombs was charged in two separate cases. One involved the sexual abuse of his stepdaughter (Victim); the other concerned his possession of child pornography. The two cases were consolidated in the sentencing court and on appeal.

### *Sexual Abuse of Victim*

¶3 Coombs repeatedly raped and sodomized Victim from the time she was six years old until she turned nine. He committed this abuse knowing that Victim had been sexually abused previously by a different family member.

¶4 The abuse began when Victim lived with her mother, two brothers, and Coombs. Victim stated that since she did not have her "real dad," she and Coombs "decided that [they] were going to do something as father and daughter"—a "father/daughter day." While Coombs and Victim were sitting on Coombs's bed, Victim stated that Coombs showed her a picture on the Internet of a girl "sucking a penis." Coombs suggested to Victim that it was "one of the options" for the two of them as a father and daughter activity. Victim testified that Coombs then took off his clothes, made her remove her clothes, and "touched" her vagina with his penis. Victim also testified that on the following day, Coombs "touched" her vagina with his penis a second time. On another occasion, Victim stated that Coombs "made" her go to his bedroom and "take off [her] clothes." Coombs then "took off all his clothes" and "made [her] suck his penis."

¶5 Coombs stopped his abuse of Victim for a brief time, but he resumed when the family moved to a new home in a

neighboring town. Victim testified that Coombs's abuse started again "like a switch had turned back on" after the move. Victim stated that Coombs entered her bedroom one day while her mother was working. While Victim was on her bed and her clothes were off, Coombs's "penis touched [her] vagina" for a third time.

¶6    Victim also said that, while she was sleeping, Coombs snuck into her bedroom on numerous occasions in the new home, pulled down her shorts and underwear, and took photographs of her. When this intrusion caused her to wake, Victim recalled seeing Coombs "running out of her room."

¶7    When Victim was nine years old, she disclosed to her grandmother that Coombs was sexually abusing her. Victim's grandmother reported the abuse to local police a few days later.

*Possession of Child Pornography*

¶8    While Coombs was being investigated for sexually abusing Victim, an independent, parallel investigation into Coombs's possession of child pornography was in progress. Coombs had downloaded at least eleven images of prepubescent females engaged in explicit sexual activity. These same images were later located on Coombs's cell phone when it was seized incident to his arrest for sexually abusing Victim. Upon discovering that Coombs was in possession of child pornography, law enforcement officers suspected he might be involved in manufacturing pornography involving Victim.

*Summary of the Proceedings*

¶9    For his sexual abuse of Victim, the State originally charged Coombs with two counts each of child rape and child sodomy, each carrying a presumptive prison sentence of twenty-five years to life. He was also charged with eleven counts of sexual exploitation of a minor for his possession of child pornography.

¶10 But Coombs agreed to a plea deal with the State in exchange for reduced charges. He pled guilty to one count of attempted child rape, one count of attempted child sodomy, and eleven counts of sexual exploitation of a minor. As a factual basis to support the plea, the State cited evidence that Coombs "had attempted to have vaginal and oral sex with his nine-year-old step daughter," that he had "put [Victim's] mouth on his penis," and that he possessed "at least 11 pictures/videos of child pornography depicting prepubescent children engaged in sexual activity." In his plea affidavit, Coombs acknowledged that (1) "[his] penis touched [Victim's] vagina, and [Victim's] mouth touched [his] penis," (2) "[Victim] was under 14 years of age," and (3) "[he] uploaded 11 images of child pornography to an online storage account." In addition to accepting a guilty plea in exchange for reduced charges, the State agreed to recommend concurrent sentencing.

¶11 At the sentencing hearing, the court clarified that the presumptive sentence for attempted child rape and attempted child sodomy is a prison term of "15 years to life and with the provision that the court may impose a lesser sentence, 10 years to life, six years to life, or three years to life, if the interests of justice so require."

¶12 Coombs's counsel asked the sentencing court to impose the minimum sentence of three years to life, asserting that Coombs's case represented "one of the rare instances where the [sentencing court] should deviate" from the presumptive sentence of fifteen years to life. Counsel argued that the following mitigating factors supported a "lesser punishment" for Coombs: (1) his minimal criminal history; (2) his age of twenty-six with "a significant life ahead of him" including "goals" and "aspirations"; (3) his openness to receiving treatment; (4) his employment prospects and strong family support; and (5) his desire to complete college-type courses.

¶13 The State asked for the presumptive sentence of fifteen years to life, arguing that the longer sentence would give

Victim time to grow into adulthood without having "to look over her shoulder at parole hearings" for Coombs. The State also asserted that "no amount of mitigating circumstances" could outweigh the circumstances of the abuse Coombs committed. The State noted that Coombs was in a position of trust and knew of prior abuse that Victim had suffered. Furthermore, Victim was of a "truly . . . vulnerable age" and was abused over a three-year period. And the abuse was not momentary or incidental but involved grooming and repeated instances of oral sex and rape. The State summarized its position in regard to mitigation: "[T]his is not a momentary touching in passing. This was a calculated thing knowing that he had a vulnerable victim that he preyed upon. . . . [Y]ou've got . . . three to four years of sexual offending. So again this is not a just momentary bad day."

¶14 Before imposing the sentence, the court specifically considered whether to "depart from the presumptive sentence" of fifteen years to life "in order to achieve the interests of justice." The court acknowledged Coombs's limited criminal history, acceptance of responsibility, strong family support, relative youth, amenability to supervision, desire for treatment, and remorse as mitigating circumstances. But the court also recognized aggravating circumstances, including the number of charges, the young age and vulnerability of Victim, the severity of Coombs's actions (i.e., repeated attempts to commit rape and sodomy on a child), Coombs's knowledge of Victim having been abused in the past, showing pornography to Victim in an attempt to normalize the behavior, and Coombs's possession of child pornography where other minors were victimized. The court advised Coombs that its sentence was "not about imposing a judgment that [found him] one hundred percent evil," but the court clarified that what Coombs "did to this child was evil." Thus, the trial judge concluded, "In good conscience, I cannot find that the interests of justice are served by a lower range. You have committed great harm to this child, and you need to be—society needs to hold you accountable for that."

¶15    The court sentenced Coombs to: (1) fifteen years to life for attempted rape of a child; (2) fifteen years to life for attempted sodomy on a child; and (3) eleven terms of one to fifteen years for sexual exploitation of a minor. All the sentences were ordered to run concurrently with each other.

ISSUES AND STANDARDS OF REVIEW

¶16    On appeal, Coombs challenges the sentences he received for attempted rape and attempted sodomy[1] by asserting that his plea counsel was ineffective in failing to argue for proportionality in sentencing under the interests-of-justice framework articulated by the Utah Supreme Court in *LeBeau v. State*, 2014 UT 39, 337 P.3d 254.[2] "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law," which we review for correctness. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶17    While not specifically identifying it as a separate issue on appeal, Coombs also advances the argument that the sentencing court "erred . . . when it did not engage in the proportionality analysis" required by *LeBeau*. This argument differs from Coombs's ineffective assistance of counsel argument in that it alleges error in how the district court sentenced Coombs. "When evaluating a sentencing determination, we traditionally afford

---

1. Coombs does not challenge the sentences he received for sexual exploitation of a minor.

2. *LeBeau* requires sentencing courts to consider "(1) the seriousness of the defendant's conduct in relation to the severity of the sentence imposed" and "(2) the severity of the sentence imposed in light of sentences imposed for other crimes in the same jurisdiction" when conducting a statutorily required "interests-of-justice analysis." *LeBeau v. State*, 2014 UT 39, ¶ 41, 337 P.3d 254.

the [sentencing] court wide latitude and discretion. Thus, we will reverse a . . . court's sentencing decision only if it is an abuse of the judge's discretion." *State v. Moa*, 2012 UT 28, ¶ 34, 282 P.3d 985 (cleaned up).

ANALYSIS

I. Coombs Fails to Show That His Counsel Performed Deficiently

¶18 To establish that his attorney was ineffective, Coombs must prove both prongs of the *Strickland* test, namely, (1) that his counsel performed deficiently and (2) that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Coombs first "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, [Coombs] must show that the deficient performance prejudiced the defense." *See id.*

¶19 "It is not necessary to address both parts of the [*Strickland*] test when the defendant makes an insufficient showing on one." *State v. Veale*, 2012 UT App 131, ¶ 5, 278 P.3d 153. Specifically, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Because we conclude that Coombs has failed to show that his counsel performed deficiently, we will refrain from analyzing the second prong.

¶20 To succeed on the first prong of the *Strickland* test, Coombs "must overcome the strong presumption that his trial counsel rendered adequate assistance by persuading the court that there was *no conceivable tactical basis* for counsel's actions. The court gives trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no

reasonable basis supporting them." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (cleaned up). Therefore, Coombs must overcome the presumption that his counsel's actions at sentencing might conceivably be considered sound trial strategy. *See Benvenuto v. State*, 2007 UT 53, ¶ 19, 165 P.3d 1195. Furthermore, "counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill." *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000); *see State v. King*, 2018 UT App 190, ¶ 14 ("This standard does not guarantee an error-free trial."). Performance is deficient under *Strickland* only when "no competent attorney" would have so acted. *Premo v. Moore*, 562 U.S. 115, 124 (2011). Thus, if this court is able to conceive of a reasonable tactical basis for trial counsel's actions, then Coombs has not rebutted the strong presumption that his counsel performed reasonably. *See Clark*, 2004 UT 25, ¶ 7.

¶21 And this court can readily conceive of a reasonable tactical basis for Coombs's counsel's decision not to prompt the sentencing court to engage in the proportionality analysis discussed in *LeBeau*. *See LeBeau v. State*, 2014 UT 39, ¶ 37, 337 P.3d 254.[3] We can formulate a tactical basis for trial counsel's

---

3. In *State v. Martin*, 2017 UT 63, 423 P.3d 1254, the Utah Supreme Court declined to reverse a sentencing court for failure to apply the framework of *LeBeau* where a formal proportionality analysis was not undertaken on the record. Recognizing the "daunting task" involved in undertaking a proportionality analysis, the *Martin* court stated: "[I]t is certainly not a task that we can require our district courts to perform without prompting or guidance from counsel." *Id.* ¶ 66. We cannot read *LeBeau* and *Martin* as removing from defense counsel the discretion *not* to make certain arguments at sentencing. *See generally Martin*, 2017 UT 63; *LeBeau*, 2014 UT 39. Every case is different and defense counsel must retain wide discretion in determining what arguments will best benefit a client under the totality of the circumstances.

decision to avoid the topic of proportionality regarding (1) the potential relation to the gravity of Coombs's crimes and (2) the potential comparison to the sentences imposed for other crimes in Utah. Because there are conceivable tactical bases for counsel's decision to avoid the topic of proportionality, we conclude that Coombs has failed to show deficient performance and accordingly the claim of ineffective assistance fails. We address each of Coombs's grievances in turn.

A.     The Gravity of Coombs's Crimes

¶22     Coombs first argues that his counsel acted deficiently in failing to direct the sentencing court's attention to its duty to compare the gravity of Coombs's offenses with the harshness of the penalty he might receive. *See LeBeau v. State*, 2014 UT 39, ¶ 42, 337 P.3d 254.[4] However, we conclude that it was reasonable for counsel to avoid comparing Coombs's conduct with the severity of his sentencing, focusing instead on highlighting mitigating factors, namely, Coombs's remorse, family support, willingness to engage in treatment, and lack of criminal history.

¶23     Arguing proportionality would not only have undermined the attempt to focus on Coombs's positive attributes, but it would have necessitated counsel to delve into the gravity of Coombs's sexual abuse of Victim. Over the course of several years, Coombs raped and sodomized Victim. He groomed her into fulfilling his sexual depravities by showing her pornographic pictures. He warped her perception of normal father-daughter activities by conning her into believing that sexual intimacy between father and daughter is normal and acceptable. He snuck into her room to take nude photographs of

---

4. In our view, *LeBeau* constitutes blatant policy-based ad hoc review of legislative action not typically undertaken by the judicial branch. *See LeBeau*, 2014 UT 39, ¶¶ 26–37. We would hope that, given the appropriate opportunity, our supreme court will revisit whether *LeBeau's* approach should continue.

her while she slept. He also victimized other children by downloading images of child pornography. And his abuse would have continued indefinitely but for Victim's courage to inform others of the violence she had been suffering.[5]

---

5. On appeal, Coombs makes much of the fact that his crimes against Victim were not "violent." His brief states that while Coombs "did admit to having oral and vaginal sex with [Victim], . . . there were never allegations of threats or physical harm." This court strongly disagrees with this characterization of child sexual abuse. While there may have been no threats of physical harm, Victim stated in the original police report that Coombs threatened to leave the family if Victim, who was six years old at the time, did not agree to perform oral sex on him. Victim refrained from telling her mother about the abuse because she feared doing so would ruin her brothers' lives, presumably because Coombs would be forced to leave the family. And even if there were no threats of bruise-causing violence, attempting to sodomize and rape a child is violent per se. Our own supreme court has noted that the Utah Legislature, in establishing a sentencing scheme for sexual offenses, "signaled its judgment that sexual crimes, which *intrude on the fundamental bodily integrity* of the victim like no others short of murder, are serious enough to warrant a sentence of [life without the possibility of parole]." *LeBeau*, 2014 UT 39, ¶ 49 (emphasis added). "And sexual crimes, particularly those involving children, represent an *especially heinous form of bodily insult*." *Id.* ¶ 50 (emphasis added). The facts in this case support the conclusion that the abuse Victim suffered constituted a violent assault on the dignity of her person. Victim continues to suffer psychological and emotional harm from Coombs's years of abuse. Victim is "still mad, angry," has "really bad outbursts," and "goes through [pain] every day." Victim will likely suffer from the effects of Coombs's abuse for the rest of her life. As the State aptly notes in its appellate brief, "[T]he fact that [Coombs] may not have drawn blood or threatened [Victim] with a

(continued…)

¶24 Had Coombs's counsel argued for an interests-of-justice proportionality analysis, he would have been forced to address and thereby highlight the profound gravity of Coombs's sexual abuse of Victim. *LeBeau* requires a sentencing court to consider the "proportionality of the defendant's sentence in relation to the *severity of his offense*." *Id.* ¶ 37 (emphasis added). Thus, Coombs's counsel would have necessarily been required to promote the questionable assertion that Coombs's abuse of Victim *proportionately* deserved only a three-year sentence. Acknowledging the gravity of Coombs's crimes while requesting a minimum sentence may have stretched the bounds of credulity well beyond the breaking point. Such an approach would have carried with it the significant risk that the sentencing court would conclude that, because Coombs failed to appreciate the gravity of his crimes, it should seriously consider the imposition of consecutive sentences. Indeed, focusing on Coombs's positive attributes—the mitigating factor approach—to the exclusion of a proportionality exercise was by far the more persuasive and reasonable strategy given the extent of Coombs's abuse of Victim.

B.      Sentences Imposed for Other Crimes

¶25 Coombs also argues that his counsel was ineffective for failing to alert the court to its duty to "compare the sentence being imposed [on Coombs] to the sentences imposed for other crimes in Utah." *LeBeau v. State*, 2014 UT 39, ¶ 47, 337 P.3d 254. But we reach a contrary conclusion because it was reasonable for counsel to avoid comparing the sentence for Coombs's crimes with those imposed for similar crimes in Utah. Comparing Coombs's sentence with the statutory sentences for more or less serious crimes would have, again, served only to highlight the

---

(…continued)
weapon to get her to submit does not mean that his crimes were non-violent and did not harm [Victim]."

gravity of Coombs's crimes and the favorable plea deal he received.

¶26    Any discussion of sentencing comparison for similar crimes would have necessarily included the sentencing schemes for child rape and child sodomy. These are the very crimes with which Coombs was originally charged and which he admitted to committing. The Utah Code states that "any touching, however slight, is sufficient to constitute the relevant element of . . . rape of a child." Utah Code Ann. § 76-5-407(2)(b) (LexisNexis 2017); *see also id.* § 76-5-402.1(1) (defining rape of a child).[6] And "any touching, even if accomplished through clothing, is sufficient to constitute the relevant element of . . . sodomy on a child." *Id.* § 76-5-407(3); *see also id.* § 76-5-403.1(1) (defining sodomy on a child). The sentence for these offenses is twenty-five years to life. *See id.* §§ 76-5-402.1(2)(a), 76-5-403.1(2)(a). Given that Coombs was originally charged with two counts of each crime related to his abuse of Victim, he faced a possible sentence guaranteed to have almost twice as long a prison stay before parole could be considered. *See State v. Gray*, 2016 UT App 87, ¶ 27, 372 P.3d 715 ("The legislature has explicitly empowered sentencing courts to impose consecutive sentences."). In contrast to the effective life sentence that Coombs could have received for the sexual abuse he admitted inflicting on Victim, he received a fifteen-year-to-life sentence, making him eligible for parole at a relatively young age given the gravity of his crimes.

¶27    We conclude that Coombs's counsel acted reasonably in focusing on mitigating factors rather than comparing sentencing options for his crimes with statutory sentencing schemes for other crimes. The State would have likely responded to a

---

6. Because the relevant statutory provisions in effect when Coombs asserts that his counsel provided ineffective assistance (i.e., at sentencing in December 2015) do not differ in any material way from those now in effect, we cite the current version of the Utah Code for convenience.

proportionality argument by pointing out that Coombs had already avoided a much longer sentence in his plea deal—and now had the audacity to argue that the "proportionality principle" of "fairness" mandated the court to incarcerate him for a minimum sentence of three years to life. *See LeBeau*, 2014 UT 39, ¶ 47. Indeed, such a comparison would have highlighted the favorable plea deal Coombs received. And it could have resulted in the sentencing court deciding to impose consecutive sentences against the State's recommendation, thinking that the defendant did not appreciate the gravity of his actions. Thus, there was a conceivable tactical basis for counsel's actions because arguing mitigation represented the safer course for Coombs.

## II. The Sentencing Court Was Not Required to Engage in an Explicit *LeBeau* Analysis Without Prompting from Counsel

¶28    Coombs also argues that the sentencing court "erred . . . when it did not engage in the proportionality analysis" required by *LeBeau*. But courts can be presumed to have engaged in the proportionality analysis. *See State v. Alvarez*, 2017 UT App 145, ¶ 4, 402 P.3d 191. It is well-established that, "[a]s a general rule, Utah courts presume that the [sentencing] court made all the necessary considerations when making a sentencing decision." *State v. Monzon*, 2016 UT App 1, ¶ 21, 365 P.3d 1234 (cleaned up); *see also State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985 (same); *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 ("[W]e will not assume that the [sentencing] court's silence, by itself, presupposes that the court did not consider the proper factors as required by law."); *Alvarez*, 2017 UT App 145, ¶ 4 (stating that the sentencing court's silence does not necessarily indicate the court did not consider required factors).[7]

---

7. In support of his argument that under *LeBeau* the sentencing court must conduct an explicit interests-of-justice analysis, Coombs cites *State v. Jaramillo*, 2016 UT App 70, ¶ 39, 372 P.3d

(continued…)

¶29 Furthermore, to the extent Coombs argues that the sentencing court plainly erred by not explicitly conducting on the record a proportionality analysis sua sponte, we agree with our supreme court that sentencing courts are required to conduct the analysis only when the parties raise the issue. *See State v. Martin*, 2017 UT 63, ¶ 66, 423 P.3d 1254. "Ranging across the criminal code in an effort to (1) identify similar offenses and (2) compare their sentencing schemes to the sentence [Coombs] received . . . . is certainly not a task that we can require our [sentencing] courts to perform without prompting or guidance from counsel." *Id.* And *LeBeau* itself implicitly acknowledges this limitation of the requirement to conduct a proportionality analysis, stating, "[C]ourts should consider all relevant facts *raised by the parties* about the defendant's crime in relation to the harshness of the penalty." *LeBeau v. State*, 2014 UT 39, ¶ 42, 337 P.3d 254 (emphasis added); *see also State v. Norton*, 2018 UT App 82, ¶ 79, 427 P.3d 312 ("[W]e will not fault the court for failing to conduct a sua sponte review of the Utah Code to identify similar offenses and then compare their sentencing schemes to the sentence it intended to impose on [the defendant]." (cleaned up)), *cert. granted*, 429 P.3d 465 (Utah 2018).

¶30 As we noted in the previous section analyzing the ineffective assistance claim, Coombs's counsel had a conceivably rational tactical basis for not advancing a proportionality argument before the sentencing court. But it does not follow that

---

(…continued)

34. As we explained in *State v. Alvarez*, 2017 UT App 145, 402 P.3d 191, *Jaramillo's* rationale does not apply to defendants who were sentenced after *LeBeau* was issued: "Because *LeBeau* and its proportionality requirement predated [the defendant's] sentence, and because [the defendant] has not demonstrated that our presumption of appropriate sentencing consideration is inapplicable, we assume that the sentencing court duly considered the proportionality of [the defendant's] sentence." *Id.* ¶ 4.

the sentencing court did not engage in a proportionality analysis just because Coombs's counsel did not ask it to do so. Indeed, nothing in the record overcomes the presumption that the sentencing court engaged in a proportionality analysis before imposing the sentence.[8] To the contrary, the sentencing court specifically considered the question of whether to depart from the presumptive sentence of fifteen years to life "in order to achieve the interests of justice." The court also addressed the severity of Coombs's conduct when it advised him that what he "did to this child was evil." The severity of Coombs's abuse was further highlighted when the court told Coombs that "society needs to hold [him] accountable for" the "great harm to this child."

¶31    Thus, we conclude that Coombs has failed to overcome the presumption of appropriate sentencing consideration by the sentencing court.

CONCLUSION

¶32    This court finds Coombs's arguments unpersuasive. First, Coombs has not shown deficient performance of his counsel in highlighting mitigating circumstances and foregoing a request that the sentencing court engage in a proportionality analysis. Second, we conclude that the presumption of appropriate sentencing considerations has not been overcome.

¶33    Affirmed.

_____

8. Coombs suggests that the sentencing court's failure to use the term "proportionality" indicates that the presumption of appropriate sentencing consideration has been overcome. However, we note that *LeBeau* nowhere requires the court to invoke the term "proportionality" as an incantation to fulfill its obligations at sentencing. *See generally LeBeau*, 2014 UT 39.