2019 UT App 163

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KIMBERLY BOWEN,
Appellant.

Opinion
No. 20160754-CA
Filed October 10, 2019

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 091900778

Emily Adams, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

MORTENSEN, Judge:

¶1     Kimberly Bowen—a real estate agent and homebuilder—was convicted on five counts of communications fraud and one count of pattern of unlawful activity in connection with a failed real estate development. Bowen sold residential lots to five separate buyers. But there were problems: among other things, the lots had no access to culinary water, and therefore the buyers could not obtain building permits. The buyers who purchased lots from Bowen consequently lost their investments and land in foreclosure. Bowen argues that (1) she received ineffective assistance of counsel and (2) the trial court erred in admitting certain rebuttal testimony and denying Bowen's motion to arrest judgment. We reject Bowen's ineffective assistance claim, and we affirm on the remaining points.

## BACKGROUND[1]

¶2    In 2006, Bowen, Sandra Chapple, and Leon Harper set out to become homebuilders. Their business model was to purchase lots, get investors with good credit to buy those lots, have the investors finance the residential construction, build homes at a "reduced rate," then sell the homes and split the profits with the investors.

¶3    To carry out their business plan, Bowen, Chapple, and Harper formed several corporate entities: Empire Alliance, Empire Custom Homes, Sterling Mountain Properties, and Mountain Lake Ventures (collectively, Empire Alliance Companies). Empire Alliance was the corporate umbrella under which the other entities would operate. Sterling Mountain Properties would buy land from a developer; then Mountain Lake Ventures would take title to the land and sell it to investors. After investors secured construction loans, Empire Custom Homes would build the homes.

¶4    Bowen was in charge of the Empire Alliance Companies. She was listed as the president of Empire Alliance and Empire Custom Homes and a manager of Sterling Mountain Properties. Although Bowen was not a manager of Mountain Lake Ventures, she was a signatory on all its accounts.[2] Bowen also provided the start-up capital—$200,000—to fund the Empire Alliance Companies. And she authorized all expenses and

---

1. We recite the facts in the light most favorable to the jury's verdict. *State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645.

2. Bowen was intentionally left out of the leadership of Mountain Lake Ventures, so she would not have to disclose an ownership interest when Mountain Lake Ventures sold lots to investors, and she acted as real estate agent for both parties.

signed most checks on behalf of the companies. Bowen also picked the location for their first venture: an undeveloped parcel in Saratoga Springs, Utah, called Fox Hollow—specifically, a portion of Fox Hollow called "neighborhood 3" (Neighborhood).

¶5     Next, Bowen negotiated with Richard Wolper, a developer, to purchase lots in the Neighborhood. Wolper informed Bowen from the outset that the lots in the Neighborhood did not have access to culinary water. In fact, Saratoga Springs (City) initially informed Wolper that he would need to finish construction of the culinary water system before the City would record the Neighborhood plat map and issue building permits for Neighborhood lots. In the fall of 2006, however, the City allowed Wolper to record the Neighborhood plat despite not having finished building the culinary water system.

¶6     With the Neighborhood plat recorded, Bowen began selling lots. But because Bowen's company did not have the money to purchase the lots directly, she had to recruit investors. Each time Bowen located an investor, Sterling Mountain Properties would buy the lot, Mountain Lake Ventures would then take title to it, and then sell it to an investor at a $65,000 mark up. Mountain Lake Ventures then sent that money to Empire Custom Homes. In total, Bowen's companies sold lots to five investors.

¶7     To attract investors, Bowen misrepresented facts and failed to disclose material information. In three sales from Mountain Lake Ventures to investors, Bowen acted as the real estate agent for both parties but she did not disclose her financial interest in Mountain Lake Ventures or the other Empire Alliance Companies. Bowen failed to disclose to the investors that the City would not issue building permits until Wolper completed the water system. Bowen also misrepresented that Empire Custom Homes was ready to build. In the end, Wolper and

Bowen were not able to raise enough money to finance the water system. And as a result, the City did not issue building permits, homes were not built, and the investors lost their money and land through foreclosure.

*Criminal Proceedings*

¶8    The State charged Bowen with five counts of communications fraud (one for each investor) and one count of pattern of unlawful activity, all second degree felonies. At trial, the State argued that Bowen (1) had a financial interest in her companies that she did not disclose to investors, (2) created Mountain Lake Ventures to "shield" her interests from being exposed, (3) misrepresented to investors that Empire Custom Homes "had subcontractors on notice ready to go," (4) knew, but failed to disclose, that the water system was incomplete and therefore the City would not issue building permits, and (5) caused one investor's earnest money to be deposited into the Empire Alliance company account rather than an escrow account.

¶9    Over the course of a seven-day trial, the State called twelve witnesses and introduced other evidence in support of its theories that Bowen had failed to disclose, or misrepresented, certain facts to investors. At least four witnesses—Wolper, Wolper's real estate agent, Harper, and one of the investors— testified that Bowen knew that the water system was not complete at the time the lots were sold to investors. And although the trial court recognized that Wolper had credibility issues,[3] it acknowledged that the jury could choose whether to believe him.

---

3. After Wolper testified, the parties had a discussion in chambers, and the trial court characterized Wolper as a "liar,

(continued…)

¶10    After the State rested, Bowen's defense counsel (Counsel) moved for a directed verdict on two grounds: (1) Wolper had been discredited on the water issue, without which there was not a crime, and (2) Bowen could not be liable for not disclosing an interest in Mountain Lake Ventures, because she was not a manager of that company. The State opposed the motion, arguing that the case involved more than the water; it was also about Bowen's undisclosed interest, her action of shielding her undisclosed interest by forming Mountain Lake Ventures, the lack of readiness to build, and one investor's money going into an improper account. The trial court denied Bowen's motion for a directed verdict and ruled that the State had presented "believable evidence that a reasonable juror" could convict on each of the charges.

¶11    In her defense, Bowen called several witnesses and introduced evidence to support her theory that she reasonably believed that the lots were buildable when she marketed and sold them to investors. Several of Bowen's witnesses testified that it was reasonable for her to believe that the lots were buildable due to the Neighborhood plat being recorded. Bowen also introduced evidence showing that Empire Custom Homes had an agreement with a licensed contractor (Contractor) to use his license for construction.

¶12    On rebuttal, the State called Contractor, who testified that he did have a license, but that Empire Custom Homes had actually listed his son as their contractor and his son did not have a contractor license. Counsel stated that he had no issue with allowing Contractor to testify about the license, but he objected to Contractor differentiating himself from his son

_____

(…continued)

liar, pants on fire," somebody with "no credibility," and an "absolute liar."

because the State could have done that during its case-in-chief and the defense had not "discussed that aspect or anything in terms of its case-in-chief." The trial court admitted the testimony, ruling that "the door has been opened on this" and it would "allow some leeway."

¶13 Counsel proposed an instruction outlining an agent's "disclosure-of-interest" duties as contained in the chapter of the Utah Administrative Code concerning real estate licensing (Instruction 49). Instruction 49 informed the jury that a real estate agent with interest in property has to disclose that interest when selling that property:

> A licensee shall not either directly or indirectly buy, sell, lease or rent any real property as a principal, without first disclosing in writing on the purchase agreement or the lease or rental agreement the licensee's true position as principal in the transaction. For the purposes of this rule, a licensee will be considered to be a "principal in the transaction" if the licensee: a) is the buyer or the lessee in the transaction; b) has any ownership interest in the property; c) has any ownership interest in the entity that is the buyer, seller, lessor or lessee; or d) is an officer, director, partner, member, or employee of the entity that is the buyer, seller, lessor, or lessee.

The State did not object to Instruction 49, and the court gave it to the jury. Counsel later explained that he asked for Instruction 49 so the State would have to prove that Bowen had an ownership interest before it could argue that she failed to disclose the alleged interest.

¶14 The jury convicted Bowen on all counts. Before sentencing, Bowen filed a motion to arrest judgment, arguing

that the State failed to show a false representation or material omission regarding Bowen's interest in Mountain Lake Ventures. The trial court denied the motion, ruling that the State presented sufficient evidence that Bowen had made false representations or material omissions. The court imposed six concurrent one-to-fifteen-year prison sentences, suspended them, and placed Bowen on probation for three years. Bowen appeals.

ISSUES AND STANDARDS OF REVIEW

¶15    Bowen argues that she received ineffective assistance when Counsel submitted Instruction 49 without any explanation that a violation of that rule did not carry criminal liability. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶16    Next, Bowen argues that the trial court abused its discretion when it allowed the State to offer Contractor's rebuttal testimony about the contractor license. "We review challenges to the admission of rebuttal testimony for abuse of discretion." *Green v. Louder*, 2001 UT 62, ¶ 19, 29 P.3d 638.

¶17    Finally, Bowen argues that the trial court erred when it denied her motion to arrest judgment. A trial court "may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element." *State v. Black*, 2015 UT App 30, ¶ 12, 344 P.3d 644 (cleaned up). "Accordingly, we review the [trial] court's decision to arrest judgment for correctness." *Id.*

ANALYSIS

I. Ineffective Assistance of Counsel

¶18    Bowen argues that she received ineffective assistance when Counsel submitted Instruction 49 without explanation that a violation of the referenced administrative rule did not create criminal liability.[4] To establish that her Counsel was ineffective, Bowen must prove that Counsel performed deficiently and that she was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove the first prong of *Strickland*, Bowen

---

4. Bowen also argues that she received ineffective assistance when Counsel failed to file a separate motion to arrest judgment concerning one of the State's theories—that Bowen deposited a buyer's earnest money into the wrong account—which applied to only one of the five investors. Bowen, however, admits in her briefing that Counsel "moved to arrest judgment on the other theories that applied to all the buyers." As discussed below, *infra* ¶¶ 29–31, that motion to arrest judgment was properly denied because there was sufficient evidence to convict Bowen as to all of the investors. Thus, even if Counsel filed a motion to arrest judgment concerning the theory that Bowen did not know that a single buyer's earnest money had been deposited in the wrong account, there was still sufficient evidence to convict Bowen on any number of the State's other theories—like Bowen's failure to disclose her interest in the lots, the lack of access to culinary water, or Empire Custom Homes' lack of readiness to build. Therefore, we conclude that Bowen's counsel was not ineffective for declining to file a motion to arrest judgment that would have been denied. *See State v. Garcia*, 2017 UT App 200, ¶ 39, 407 P.3d 1061 ("The failure of counsel to make motions that would be futile if raised does not constitute ineffective assistance, because the decision not to pursue a futile motion is almost always a sound trial strategy." (cleaned up)).

"must overcome the strong presumption that [her] trial counsel rendered adequate assistance by persuading the court that there was *no conceivable tactical basis* for counsel's actions." *State v. Coombs*, 2019 UT App 7, ¶ 20, 438 P.3d 967 (cleaned up); *accord State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. Our supreme court stated in *Gordon v. State* that a tactical decision is "[a]ny decision based on counsel's purposeful analysis . . . whether or not it turned out to be a bad tactic in hindsight." 2016 UT 11, ¶ 32, 369 P.3d 1255. Accordingly, we give "trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *Coombs*, 2019 UT App 7, ¶ 20 (cleaned up).

¶19   Here, Counsel's submission of Instruction 49 was not deficient performance. Counsel stated that he decided to request Instruction 49 so he could argue that "Bowen complied with her duties under the Administrative Rules governing Realtors." In other words, Counsel engaged in a purposeful and strategic analysis in proposing Instruction 49 and believed that it supported the defense theory that Bowen had no duty to disclose because she did not have an ownership interest in Mountain Lake Ventures. This amounts to a tactical decision.[5]

---

5. Bowen argues that *State v. Mahoney*—a case in which the Supreme Court of New Jersey held that admission of an administrative rule "without appropriate guidance from the court was error"—is instructive. 908 A.2d 162, 164 (N.J. 2006). But *Mahoney* is not this case. First, in *Mahoney*, the State offered an administrative rule as evidence and the defendant objected. *Id.* at 173. Consequently, the nature of our review is fundamentally different from the review in *Mahoney*. Here we look only to whether Counsel's actions were objectively reasonable, *see Honie v. State*, 2014 UT 19, ¶ 32, 342 P.3d 182, rather than whether the "probative value of the [administrative

(continued…)

¶20    Next, we conclude that Counsel's tactical decision was not objectively unreasonable, *see Honie v. State*, 2014 UT 19, ¶ 32, 342 P.3d 182 ("As to the first *Strickland* prong, [a defendant] must show that trial counsel's representation fell below an objective standard of reasonableness when measured against prevailing professional norms." (cleaned up)), because Instruction 49 required a higher burden than what was actually required to prove Bowen's crimes. To prove that Bowen engaged in communications fraud, the State was required to show, among other things, that Bowen made "material omissions" in an attempt to defraud others. *See* Utah Code Ann. § 76-10-1801(1) (LexisNexis 2017)[6] (listing the elements of communications fraud). To satisfy this element, the State raised several theories, one being that Bowen failed to disclose her *financial* interest in the Neighborhood lots when representing both parties involved in the lot sales. Instruction 49, however, heightened this standard by instructing the jury that Bowen was obligated to

---

(…continued)

rule] was outweighed by its . . . prejudicial effect," *Mahoney*, 908 A.2d at 173. Second, the *Mahoney* court held that "the trial court's failure to instruct the jury on how to consider and apply [the administrative rule] to the facts of th[e] criminal case" was unduly prejudicial and therefore warranted reversal. *Id.* at 174. In this case, however, unlike in *Mahoney*, the State specifically told the jury that Instruction 49 is "not a criminal code" and "[t]his is a criminal case." Although the State's statement is not considered in our ineffective assistance analysis, where our focus is on Counsel's tactical decision, it serves to additionally differentiate this case from *Mahoney*. Accordingly, *Mahoney* is not instructive in this case.

6. Because the statutory provision in effect at the relevant time does not differ in any material way from that now in effect, we cite the current version of the Utah Code.

disclose only an *ownership* interest in Mountain Lake Ventures—the entity that sold the lots to investors. Bowen argued that she did not have an ownership interest in Mountain Lake Ventures and therefore did not have a duty to disclose under Instruction 49. Thus, where Instruction 49 arguably stood to help Bowen, it does not follow that inclusion of that instruction was objectively unreasonable.[7]

¶21 Bowen's Counsel made a reasonable tactical decision to request Instruction 49. And Instruction 49 could have led the jury to believe that Bowen made a material omission only if she failed to disclose an *ownership* interest in Mountain Lake Ventures, not if she failed to disclose a mere *financial* interest in the Neighborhood lots.[8] Accordingly, we conclude that

---

7. At oral argument, Bowen conceded that if Counsel's goal in submitting Instruction 49 was to coax the jury into believing that so long as Bowen had not violated the referenced rule, then she had not made a material omission sufficient for communications fraud, such a strategy would have been sound. It follows that had Counsel provided additional context and explanation minimizing Instruction 49 by clarifying its inapplicability in the criminal law setting—as Bowen suggests on appeal that Counsel should have done—that would have undermined Counsel's overall strategy in requesting Instruction 49 in the first place.

8. In this same vein, we are hard-pressed to see how Bowen was prejudiced by inclusion of Instruction 49. Bowen argues that the jury could have convicted her based solely on a violation of the administrative rule stated in Instruction 49. We disagree. Bowen's argument ignores that, when taken as a whole, the jury instructions correctly informed the jury of the elements of communications fraud, including the element that required a false representation or material omission. *See State v. Beckering*, 2015 UT App 53, ¶ 23, 346 P.3d 672 ("To determine if jury

(continued…)

Counsel's performance was not deficient, and therefore Bowen's ineffective assistance claim fails. *See Coombs*, 2019 UT App 7, ¶ 19 ("It is not necessary to address both parts of the *Strickland* test when the defendant makes an insufficient showing on one." (cleaned up)).[9]

---

(…continued)

instructions correctly state the law, we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." (cleaned up)). Instruction 49 does not detract, omit, conflict with, or otherwise change the elements instruction, including the element requiring a false representation or material omission. *Cf. State v. Campos*, 2013 UT App 213, ¶ 64, 309 P.3d 1160 ("Where instructions are in irreconcilable conflict, . . . the rule requiring instructions to be read together has no application." (cleaned up)). To be sure, while Instruction 49 lists examples of when a real estate agent may have breached her duty to disclose, it is silent as to whether such a breach does, or does not, amount to a "material omission." Thus, we conclude that Bowen was not prejudiced by inclusion of Instruction 49 because it did not conflict with the elements instruction, and therefore the jury in this case was correctly instructed on the law.

9. In a rule 23B motion filed simultaneously with her brief, Bowen seeks remand to the trial court to make findings and conclusions that her Counsel was ineffective for failing to (1) call a certain defense witness, (2) file a bill of particulars, and (3) raise "certain points" during closing argument. "A remand under rule 23B will only be granted upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Lee*, 2014 UT App 4, ¶ 5, 318 P.3d 1164

(continued…)

## II. Rebuttal Testimony

¶22 Bowen next argues that the trial court abused its discretion by permitting Contractor's rebuttal testimony concerning Empire Custom Homes' lack of a contractor license.[10] Specifically, Bowen argues that this testimony should not have

---

(…continued)

(cleaned up); *see also* Utah R. App. P. 23B. Bowen's motion does not demonstrate nonspeculative facts that would support a determination that trial counsel was ineffective or that there was any resulting prejudice. The motion and accompanying affidavit make conclusory allegations concerning the issues raised, but Bowen does not demonstrate that calling an additional defense witness or filing a bill of particulars would have changed the outcome at trial. Further, Bowen fails to identify the "certain points" that Counsel was supposed to raise in closing. Accordingly, we deny Bowen's rule 23B motion.

10. We note that Bowen objected only to "the State presenting testimony that [Contractor's son]—who was listed in an exhibit as [Empire Custom Homes'] license-holder . . . was not licensed." Thus, Bowen has preserved only this narrow issue. And to the extent that Bowen's claim goes beyond this preserved issue, she may have invited any perceived error. When the State called Contractor as a rebuttal witness, Counsel stated that he did not "have an issue for the rebuttal aspect of the contract" and that the State was "certainly entitled to come and talk about that," but Counsel did not want the State to be able to point out that the contractor license belonged to Contractor, not Contractor's son. In any event, because we conclude that admission of Contractor's testimony was not an abuse of the trial court's discretion, we decline to reach the issue of whether Bowen invited any perceived error.

been permitted because she had not "opened the door" during her defense. We disagree.

¶23 The purpose of rebuttal evidence is to "refute, modify, explain, or otherwise minimize or nullify the effect of the opponent's evidence." *Green v. Louder*, 2001 UT 62, ¶ 23, 29 P.3d 638 (cleaned up); *see also* Utah R. Crim. P. 17(f)(5) (stating that after the defense's case, "the parties may offer only rebutting evidence unless the court, for good cause, otherwise permits").

¶24 Here, the State, in its case-in-chief, presented evidence that despite their representations to buyers, Bowen and Empire Custom Homes were not prepared to build after buyers purchased lots. In her defense, Bowen volunteered an exhibit showing that Empire Custom Homes had a valid contractor license and was therefore ready to build. On rebuttal, the State called Contractor—whose license had been offered by Bowen in her defense—who testified that although he had a license, Empire Custom Homes had actually partnered with Contractor's son, who did not have a license. Simply put, when Bowen offered the exhibit showing the contractor license, she opened the door to rebuttal testimony to "explain or otherwise minimize . . . the effect of [that] evidence." *Green*, 2001 UT 62, ¶ 23 (cleaned up). Therefore, admitting Contractor's rebuttal testimony was not an abuse of the trial court's discretion on evidentiary issues. *Id.*

### III. Motion to Arrest Judgment

¶25 Lastly, Bowen argues that the trial court's denial of her motion to arrest judgment was erroneous. A court may set aside a jury verdict on a motion to arrest judgment only when "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Hand*, 2016 UT App 26, ¶ 11, 367

P.3d 1052 (cleaned up). "In assessing a claim of insufficiency of the evidence, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645 (cleaned up).

¶26    To convict Bowen of communications fraud, the State was required to prove that she (1) devised "any scheme or artifice to defraud another or to obtain from another money, property, or anything of value" (2) did so "by means of false or fraudulent pretenses, representations, promises, or material omissions" and (3) "communicate[d] directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice." Utah Code Ann. § 76-10-1801(1) (LexisNexis 2017).

¶27    Here, Bowen focuses only on the second element of communications fraud, arguing that her motion to arrest judgment should have been granted because (1) there is insufficient evidence showing that Bowen's failure to disclose her financial interest in the Neighborhood lots was material, (2) there is insufficient evidence showing that Bowen lied about the culinary water system being complete, and (3) the prosecutor argued facts not in evidence.

¶28    As an initial matter, we note that Bowen has not challenged all five of the State's theories that go to the second element of communications fraud, *see supra* ¶ 8, as grounds to overturn the trial court's denial of her motion to arrest judgment. Specifically, Bowen has not argued that there was insufficient evidence showing that she and Empire Custom Homes misrepresented their readiness to build homes to buyers, and this evidence, standing alone, would likely have been a sufficient ground to deny Bowen's motion. Nevertheless, we address each of Bowen's arguments in turn.

¶29    The State presented sufficient evidence showing that Bowen's failure to disclose her financial interest in the Neighborhood lots was material. Bowen argues that certain buyers in this case testified that whether Bowen had a financial interest in sales did not affect their investment decision. However, our supreme court has explained that the materiality of statements or omissions turns on "whether they were likely to influence *a reasonable investor*." *State v. Larsen*, 865 P.2d 1355, 1362 (Utah 1993) (emphasis added). Thus, subjective opinions of the buyers in this particular case are not dispositive of the issue.

¶30    Rather, the State's evidence that Bowen (1) was the president or manager of all but one of the Empire Alliance Companies, (2) was a signatory on the accounts of the other company—Mountain Lake Ventures—and (3) stood to gain financially from all of the sales was sufficient evidence of a material omission in the eyes of a reasonable investor.[11] In other words, any reasonable investor would want to know if the person purportedly representing the investor's interests in a transaction stood to profit from the sale.

¶31    Next, the State presented evidence sufficient to show that Bowen lied about the status of the water system to the buyers. Bowen argues that Wolper's and his real estate agent's testimonies were inherently improbable. This argument falls short for two reasons. First, Bowen ignores that two additional witnesses—Harper (Bowen's business partner) and Pickering

---

11. Bowen also argues that her omission in this case was not material because "the buyers acknowledged in their real estate purchase contracts that they were not entitled to know how much" Bowen purchased the lots for. Again, this argument touches on only the subjective point of view of the particular investors in this case, not the reasonable investor. Thus, we also reject Bowen's argument on this point.

(one of the investors)—testified that Bowen was aware that the water system was not complete and failed to disclose that fact. Thus, even without Wolper's and his real estate agent's testimonies, there is sufficient evidence for a jury to find that Bowen knew about and did not disclose the lack of a culinary water system.

¶32    Second, Bowen has inadequately briefed her inherent improbability argument and whether it applies to Wolper's and his real estate agent's testimonies. *State v. Garner*, 2002 UT App 234, ¶ 8, 52 P.3d 467 ("It is well established that Utah appellate courts will not consider claims that are inadequately briefed."). Simply put, Bowen merely points to the fact that the trial court called Wolper a liar and said he has "no credibility." Bowen goes on to highlight that Wolper's real estate agent "could not point to anything in writing showing that he disclosed the water issue to Bowen." But these facts do nothing to show that the testimony at issue was "inherently improbable." *See State v. Prater*, 2017 UT 13, ¶ 38, 392 P.3d 398 (holding that to render testimony inherently improbable a party must show that the testimony was materially inconsistent, patently false, and lacking any corroboration). Furthermore, in our view, this record demonstrates only inconsistencies in Wolper's and his real estate agent's testimonies, and inconsistencies "by themselves are insufficient to invoke the inherent improbability [doctrine]." *Id.* ¶ 39 (cleaned up).

¶33    Lastly, Bowen argues that the trial court should have arrested judgment because the State engaged in prosecutorial misconduct by bringing in evidence of uncharged conduct.[12] As an initial matter, we note that Bowen did not preserve this

---

12. Bowen argued that the State also engaged in prosecutorial misconduct when it "argued matters not in evidence." Bowen, however, withdrew this issue from appeal in her reply brief.

issue—a point which Bowen concedes in her reply brief. *See State v. Larrabee*, 2013 UT 70, ¶ 16, 321 P.3d 1136 (holding that filing a motion to arrest judgment does not preserve an issue that could have been objected to at trial). Instead, Bowen argues that Counsel's failure to object to the State "bringing in evidence of uncharged conduct" amounts to ineffective assistance of counsel. Bowen, however, dedicates a single paragraph to this issue, without citing any legal authority supporting her argument, and thus does not carry her burden of persuading us that defense counsel's failure to object under these circumstances amounts to deficient performance.

¶34 Bowen has failed to carry her burden of showing that there was insufficient evidence to convict her of the charged crimes. Therefore, we affirm the trial court's denial of her motion to arrest judgment.

CONCLUSION

¶35 We reject Bowen's claim for ineffective assistance because Counsel's performance—as related to Instruction 49—was not objectively deficient. We further conclude that the court did not err in allowing the State's rebuttal testimony where Bowen had opened the door to rebuttal testimony concerning her companies' readiness to build on the lots. Finally, we conclude that the trial court's denial of Bowen's motion to arrest judgment was not erroneous because the State presented evidence sufficient for a jury to convict Bowen. Affirmed.

_____